CONTINENTAL CASUALTY COMPA-NY, a Corporation, Plaintiff,

v.

DLH SERVICES, INC., a Corporation, Defendant and Third Party Plaintiff,

v.

ALEXANDER & ALEXANDER, INC., a Corporation, Third Party Defendant.

No. S82–0064C.

United States District Court,
E.D. Missouri,
Southeastern Division.

Sept. 8, 1983.

Raymond H. Vogel, Cape Girardeau, Mo., for plaintiff.

Stephen E. Strom, Cape Girardeau, Mo., for defendant and third party plaintiff.

G. Carroll Stribling, Jr., St. Louis, Mo., for third party defendant.

## MEMORANDUM, FINDINGS OF FACT, AND CONCLUSIONS OF LAW

WANGELIN, District Judge.

This suit was brought by Plaintiff Continental Casualty Company (hereafter "CCC") against Defendant DLH Services, Inc. (hereafter "DLH"), claiming $26,760 due on the premiums accounts on four insurance policies issued by CCC. Jurisdiction is founded on diversity of citizenship. DLH denied that two of the policies were its obligation, denied that the premiums were properly calculated on any of the four accounts, and alleged that any premiums due had been compromised and settled by an agreement with CCC's agent Alexander & Alexander, Inc. (hereafter "A & A"). DLH also filed a Third Party Petition against A & A, claiming indemnity against any judgment which might be entered in favor of CCC against DLH, which A & A denied. CCC denied that A & A had any authority to make any compromise of the premium accounts. Due to the nature of the evidence to be presented, the Court agreed to hear simultaneously the original Complaint and the Third Party Petition.

Plaintiff CCC's witness Ralph Davis, a CCC auditor, testified that the four policies were issued on an initial premium paid at the commencement of the policy period based upon rates applied to estimated sizes of various risk categories for the upcoming policy period, such as sales made, number of employees hired, number of vehicles owned, amounts of wages paid, footage of construction work done, etc. The policies provided for an audit of each of the categories at the end of the policy period to determine the actual final size of each category, which produced an "audit premium" due after deducting the initial premium already paid. Davis testified that he conducted the audits on each of the policies, which consisted of conferring with the insureds' officials after the end of the policy period and examining the books of each of the insured companies in order to obtain the final figures for each of the policy risk categories. He then sent his figures to CCC, whereupon other CCC employees are instructed to apply the policy rates to his figures and extend the amounts into premiums due on each risk category. He then identified as exhibits an "audit" for each policy issued by CCC, which purported to summarize the total premiums due on that policy based on each risk category, deducted the initial premium previously paid, and stated an "audit premium" balance due. The audit was then to be sent to A & A, who paid CCC therefor (less its commission) and in turn billed the insureds on A & A statements and collected the premiums. Davis' audit work did not include determining the proper risk rates under the policy or determining the premium due under each risk category or the balance of the audit premium due. Davis admitted that the insureds' officers had objected to many of his audit figures and had other objections to the audit premiums charged. Defendant objected to the introduction of the audits, which the Court overruled at the time and agreed to take with the case. CCC offered no other evidence concerning the amounts claimed to be due.

Plaintiff CCC's own evidence revealed that two of the policies (No. CCP4766287 upon which $5540 premium was claimed and No. BUA4629208 upon which $3516 premium was claimed) were issued to Southern Illinois Stone Company and additional insureds other than DLH. CCC's counsel admitted that DLH was not the insured on

those policies, but contended that the corporate association between DLH and the companies named as insureds was such that recovery of the premiums was authorized against DLH. However, at the close of Plaintiff's case, no such evidence had been presented.

From the Answers to Interrogatories filed by the parties, the pre-trial summaries of the case filed by the parties' attorneys, the testimony of Ralph Davis, and the statements of counsel in open court, the Court finds that DLH engaged A & A to procure the many bonds and insurance policies needed in the conduct of its heavy construction business. A & A was the agent of CCC and other insurance companies. A & A contacted its insurance companies and arranged for the policies to be issued. CCC and the other companies would issue the policies and deliver them to A & A. Davis testified that in some instances A & A employees would actually sign and issue the policies. A & A would pay CCC after deducting its commission. A & A would deliver the policies to DLH and send an A & A bill to DLH for the premium. DLH would pay the premium to A & A. When a CCC audit resulted in audit premium due, the audit was sent to A & A, which remitted the net premium (less commission) to CCC and sent the audit and an A & A bill therefor to DLH.

Plaintiff offered in evidence the deposition of Les Barnes, now deceased, who had been the DLH comptroller. That evidence and the admissions of counsel and the testimony of Davis proved that Barnes disputed many of the items on the audit premiums and that subsequently on December 29, 1980, A & A received and cashed three checks from DLH, Southern Illinois Stone Company and D.L. Harrison Company totalling $142,439.66, which represented a large number of policy premiums being billed by A & A to DLH, including a part of the CCC audits here in dispute, which parts were forwarded by A & A to CCC after deducting commissions. DLH contends that these payments constituted a compromise and settlement of the audit dispute by A & A as the agent of CCC, while A & A

claims that the settlement did not include the unpaid portions of the audits. CCC claims that A & A had no authority to bind CCC to any settlement.

At the close of Plaintiff's evidence, Defendant moved for judgment in its favor.

■ The Court finds that Plaintiff failed to prove the amounts allegedly due under the policies. Plaintiff did offer evidence that Davis had accurately audited the insureds' books, that Davis had turned over his audit figures to CCC, and that certain exhibits constituted CCC's statements for the audit premiums due. However, Plaintiff failed to prove Davis' audit figures themselves, the coverages provided in the policies, the premium rates applicable to the coverages, the accuracy of the premium calculations made by CCC, or the initial premiums previously paid. In short, Plaintiff at best only proved the identity of its statements for the premiums without proving what made up the statements. Further, Plaintiff's own evidence proved that two of the premiums were due, if at all, from companies other than Defendant DLH. Therefore, the Court finds that Plaintiff failed to meet its burden of proof and Defendant's motion for judgment must be granted.

■ Even if Plaintiff had met its burden of proof, the Court finds from Plaintiff's own evidence that CCC had settled its accounts with DLH through the actions of its agent A & A. All the parties agree that all of CCC's dealings with DLH were through A & A. All contact with CCC for issuance of the policies was by A & A, some of the policies were actually issued by A & A as agent for CCC, all statements for the premiums were issued by A & A to the insureds, and all premiums were paid by the insureds to A & A. After the audits were conducted and the audit premium statements issued, many disputes arose over the coverages and audit accuracy. Thereafter the insureds paid checks totalling $142,439.66 to A & A, which covered many premium statements on other policies and certain admitted compromises on some items

and at least part of the audit premiums which were allegedly due. A & A sent CCC the premiums so paid. From the evidence presented during Plaintiff's case, the Answers to Interrogatories filed, the deposition of Les Barnes offered by Plaintiff, and the admissions of counsel, the Court finds that any amounts allegedly due on the four audit premiums were settled and compromised between the insureds and CCC through its agent A & A. Therefore, the motion for judgment at the close of Plaintiff's case must be granted.

Judgment will be entered accordingly in favor of Defendant on Plaintiff's Complaint in accordance with separate Order filed. With the Plaintiff having failed to prove its case, the Third Party Petition becomes moot.