CONTINENTAL CASUALTY
COMPANY, a Corporation,
Appellant,

v.

DLH SERVICES, INC., a
Corporation, Appellee,

v.

ALEXANDER & ALEXANDER, INC.,
a Corporation.

No. 83–2337.

United States Court of Appeals,
Eighth Circuit.

Submitted June 15, 1984.

Decided Jan. 17, 1985.

Raymond H. Vogel, Cape Girardeau, Mo., for appellant.

Fordyce & Mayne, P.C., G. Carroll Stribling, Jr., St. Louis, Mo., for appellee Alexander & Alexander, Inc.

Stephen E. Strom, Finch, Bradshaw, Strom & Steele, Cape Girardeau, Mo., for appellee DLH Services, Inc.

Before ROSS, Circuit Judge, HENLEY, Senior Circuit Judge, and BOWMAN, Circuit Judge.

BOWMAN, Circuit Judge.

This is an appeal from the District Court's[1] grant of defendant's motion for dismissal at the close of plaintiff's case. 571 F.Supp. 892 (1983). Plaintiff/appellant Continental Casualty Company (CCC) sued defendant/appellee DLH Services, Inc. (DLH) for premiums alleged to be due on certain insurance policies. The policies were acquired for DLH by Alexander & Alexander (A & A), an insurance agent. DLH answered that CCC had sued the wrong party on two of the policies, and that DLH had settled with A & A the disputed premiums on the rest of the policies. DLH filed a third party claim against A & A for indemnity for any amount DLH might be adjudged to owe CCC.

CCC's claim and the third party claim were consolidated and the case was tried without a jury. Jurisdiction was based on diversity of citizenship.

At the close of CCC's case, DLH moved to dismiss under Fed.R.Civ.P. 41(b), on the ground that it had settled the dispute through its payments to A & A. DLH also maintained that the evidence showed that there was a dispute between DLH and CCC over the accuracy of the audit, and that the evidence presented by CCC was insufficient to resolve that dispute.

The District Court granted DLH's motion to dismiss, finding that CCC had failed to prove the amounts of the premiums allegedly due on the policies. The District Court further found that CCC had proved the identity of the policies and the premium statements, but had not proved the basis of the premium computation or who had made those computations. The court also found that, even assuming CCC had proved the amount of the premiums allegedly due, its agent A & A had settled the dispute on its behalf. Therefore, the court dismissed the case and entered judgment for DLH.

For reversal, CCC argues that the District Court erred in finding that it failed to present sufficient evidence as to the amount of the premiums due from DLH. CCC further argues that DLH failed to prove that its settlement of the disputed premiums with A & A was authorized by CCC. With respect to two of the policies, CCC admits that it sued the wrong party.

We hold that the District Court's finding that CCC failed to prove the amounts due under the policies is not clearly erroneous. Accordingly, we affirm the judgment below.[2]

I. Facts

In 1979, DLH contacted A & A in an effort to obtain automobile and comprehensive liability insurance policies. The coverage arranged by A & A included several policies issued by CCC for the period from June 1, 1979 until June 1, 1980. Billing for the insurance policies was handled through A & A. A & A sent the policies to DLH and signatures of A & A employees appear on the policies.

When the insurance was issued, DLH paid initial premium deposits to A & A based on DLH's estimates of the number of automobiles, employees, and other risk items to be insured for the policy period. At the close of the policy period, CCC sent

1. The Honorable H. Kenneth Wangelin, United States District Judge for the Eastern District of Missouri.

2. We need not decide whether A & A was authorized to settle the disputed premiums with DLH, and we express no opinion on that issue.

one of its auditors, Ralph Davis, to examine DLH's records. Davis's audit reflected a much higher number of risk units than contained in DLH's original estimates. Leslie Barnes, DLH's comptroller at the time, contested much of the information contained in Davis's audit. This dispute was significant because the information was gathered for CCC's use in determining if premiums in excess of the premium deposit were due for the policy period. Although the dispute between Barnes and Davis apparently had not yet been resolved, Davis sent the audit to CCC where some unidentified person used the audit to determine that DLH owed an additional premium of $35,501 on the 1979–80 policies. The procedures used to arrive at this figure were not established clearly at trial. CCC forwarded this information to A & A which then billed DLH for that amount. DLH disputed the accuracy of the billing. After a series of negotiations with A & A, DLH agreed to pay a part of the disputed sum to A & A, allegedly as a full settlement of the dispute. A & A accepted DLH's payments and, after deducting its commissions, forwarded the balance to CCC. CCC then filed this suit for the balance that it claims DLH still owes.

At trial, CCC presented only one witness—Ralph Davis. The insurance policies were admitted into evidence, as was Davis's audit, albeit over the objection of DLH's counsel. Once the audit was placed into evidence, CCC succeeded only in establishing its identity and the fact that Davis entered the figures it contained after a review of DLH's records. No testimony was presented establishing the method used to arrive at the figures or demonstrating their accuracy. Moreover, no testimony was presented or explanation given as to the accuracy of the premium calculations, or how they were derived.[3] With respect to two of the policies in question, CCC admitted that it had sued the wrong party, since they had not been issued to DLH.

A deposition given by Leslie Barnes was also admitted into evidence.[4] In this deposition Barnes discussed numerous questions he raised as to the accuracy of the audit. When reviewing the reconciliation statements compiled from the audit and forwarded to DLH through A & A, Barnes discovered errors in computation of the premiums totaling $17,165. Plaintiff's Exhibit 10. Barnes also testified that the disputed premiums were settled with A & A, and gave his account of the negotiations leading up to that settlement.

## II. Discussion

■■■ The District Court disposed of this case on a motion for dismissal made at the close of plaintiff's case in chief under Fed.R.Civ.P. 41(b). In such a case, tried before the court without a jury, the court's role is fundamentally different from its role in a jury trial when ruling on a defend-

---

3. CCC contends that DLH's attorney admitted at trial the amount of the premiums due, and is thus foreclosed from disputing that issue on appeal or taking advantage of any failure of proof on the part of CCC. This contention is based on the following statement made at trial by DLH's counsel referring to an unlettered exhibit prepared at the request of the court which summarized the portions of Davis's audits that were in dispute:

> THE COURT: Now, let's go around to the other side. Do you admit to owing them anything?
> MR. STROM: We admit that if we had not settled with their agent, A & A, that we would owe them the difference between the amount they claim on Exhibits 5 and 8, and the amount that we contested on each of those.

Trial Transcript at 73. CCC reads this statement as an admission that the premiums were accurately calculated, and that unless there was a valid accord and satisfaction, DLH was liable for the amounts spelled out in that exhibit. CCC draws far more from this statement than it contains. DLH's counsel was merely stating that, had there been no settlement, DLH would have owed CCC an amount equal to CCC's claim minus the amount disputed by DLH. The statement is in no way an admission of the accuracy of CCC's audit or premium calculations precisely because the dispute over the amounts owed was due to DLH's questioning of CCC's calculations. This statement did not relieve CCC of the duty of proving the accuracy of the audit and the method by which it calculated the premiums.

4. Barnes died before the trial began.

ant's motion for a directed verdict at the close of the plaintiff's case. In ruling on a motion for directed verdict, the judge must determine if the evidence is such that reasonable minds could differ on the resolution of the questions presented in the trial, viewing the evidence in the light most favorable to the plaintiff. On a motion for directed verdict, the court may not decide the facts itself. In deciding a Rule 41(b) motion, however, the trial court in rendering judgment against the plaintiff is free to assess the credibility of witnesses and the evidence and to determine that the plaintiff has not made out a case. On review of a trial court's grant of a Rule 41(b) motion, this court may not try the case *de novo* or pass on the credibility of witnesses, but may only reverse the trial court's findings of fact if they are clearly erroneous. *Shull v. Dain, Kalman & Quail, Inc.*, 561 F.2d 152, 155 (8th Cir.1977), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978).

■ Having carefully reviewed the record, including exhibits, the deposition of Leslie Barnes, and the trial transcript, we conclude that the District Court's finding that CCC failed to establish the amount of the premiums allegedly owed by DLH is not clearly erroneous. The evidence before the court showed that there was a dispute between CCC and DLH over the proper amount of the premiums, but it failed to show how CCC arrived at the premium amounts that CCC claimed DLH still owed. CCC's only witness, its auditor Ralph Davis, admitted that he had nothing to do with the computation of the premiums or the setting and application of risk rates. Davis's function was merely to determine the number of "risk units" for each policy held by DLH, *e.g.*, employees covered by workmen's compensation, automobiles to be insured, and other factors entering into the computation of the premiums, and to forward his determinations to CCC. Neither the method for determining the risk units nor the basis for computation of the premiums claimed was ever explained, either through testimony or exhibits.

In short, the District Court was presented a puzzle with many pieces, but was given no method of putting them together. In the face of vigorous cross-examination by DLH's counsel, CCC's only witness failed to give the court a meaningful explanation of his audit, the basis of his figures, or the method by which they were derived. These shortcomings of proof, together with conflicts between Davis's testimony and Barnes's deposition, raised substantial questions of evidentiary weight and credibility, which were for the District Court to resolve. In light of these circumstances, we hold that the District Court's finding that CCC failed to make out a case against DLH for the disputed premiums is not clearly erroneous.

The judgment of the District Court is affirmed.