Kate **SULLIVAN**, Plaintiff–Appellant,

v.

**CITY OF CLEVELAND HEIGHTS,** Cleveland Heights Hockey Team, and David Zarnoch, Defendants–Appellees.

No. 87–3451.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 17, 1988.

Decided March 15, 1989.

Jane M. Picker (argued), Cleveland, Ohio, for plaintiff-appellant.

Donald K. Barclay, Kathryn Gonser Eloff (argued), Cleveland Heights, Ohio, John H. Gibbon, for defendants-appellees.

Before JONES and RYAN, Circuit Judges, and BROWN, Senior Circuit Judge.

PER CURIAM.

Appellant Kate Sullivan, by and through her mother, Joan Farragher, appeals the district court's dismissal of her gender discrimination suit. Sullivan claims that her rights under the equal protection clause of the fourteenth amendment and under 42 U.S.C. § 1983 were violated because the clothes-changing facilities which were made available for her at a public hockey arena were unequal to those provided for male hockey players. Because we conclude that the district court did not err in finding that the facilities afforded to Sullivan were equal to those of her male counterparts, we affirm the district court's dismissal of her suit.

Kate Sullivan, ten years old at the time of suit, was enrolled in the City of Cleveland Heights' hockey program. The city's hockey leagues play at the Cleveland Heights Recreation Pavilion which at that time had one locker room for the home team. From 1982 to the spring of 1985 Sullivan, the only girl on the team, changed clothes in the same locker room area as the boys on her team. During an "away" game at a different facility in the spring of 1985, Sullivan's coach, Kenneth Hrabak, prompted by complaints from the boys on the team, told Sullivan that she could no longer change clothes in the same area as the boys. From that time until the filing of this suit, Sullivan changed clothes for home games in the women's restroom in the lobby area of the Cleveland Heights Recreation Pavilion some one hundred to one hundred fifty feet from the locker room. More recently, a room in the rear of the women's restroom was made available for her to change.

On November 21, 1986, Sullivan filed suit in district court praying only for injunctive and declaratory relief and attorney fees against the City of Cleveland Heights and Zarnoch, director of the Cleveland Heights hockey league, alleging that they discriminated against her by placing her on a team with less skilled players because she is a female and by not providing her with changing facilities equal to those used by the male hockey players. The first issue was ultimately settled and dismissed. The second issue was tried on February 14, 1987. Ruling from the bench after the presentation of Sullivan's case, United States District Judge Alice M. Batchelder granted the city's motion for involuntary dismissal. On April 10, 1987, the district court entered its opinion and order dismissing the unequal facilities claim pursuant to

Fed.R.Civ.P. 41(b)[1] and finding that Sullivan had no right to relief based on the law and the facts. It is the dismissal of this claim, brought pursuant to the equal protection clause of the fourteenth amendment and 42 U.S.C. § 1983,[2] that Sullivan appeals to this court.

The Supreme Court in *Craig v. Boren,* 429 U.S. 190, 197, 97 S.Ct. 451, 456–57, 50 L.Ed.2d 397 (1976), articulated the proper standard for gender-based discrimination: "To withstand constitutional challenge, previous cases establish that classifications by gender must serve important government objectives and must be substantially related to achievement of those objectives." *See also Yellow Springs v. Ohio High School Athletic Ass'n,* 647 F.2d 651, 657 (6th Cir.1981); *Canterino v. Wilson,* 546 F.Supp. 174, 206 (W.D.Ky.1982); *Glover v. Johnson,* 478 F.Supp. 1075, 1079 (E.D. Mich.1979). Sullivan does not contend that she has a right to dress and undress in the same room as the boys on her team; thus she does not assert that the mere fact of separation is a gender classification for constitutional purposes. Sullivan's contention is that by affording her an unequal facility for changing clothes, the defendants imposed upon her an unconstitutional classification based on gender. In applying the rule of *Craig* to the present case, we must therefore first determine whether Sullivan was accorded treatment by the City of Cleveland Heights unequal to that accorded her male counterparts. If such unequal treatment existed, the equal protection clause of the fourteenth amendment was violated unless the difference in the facilities bore a substantial relationship to an important governmental objective.

Sullivan points to several factors upon which she bases her assertion that the clothes-changing facilities made available for her were unequal to the locker room in which the male hockey players changed clothes. Sullivan claims that the women's restroom and adjacent room in which she changed clothes were less secure than the locker room and were also not supervised as was the locker room. She also asserts that her bar from the locker room area and her not being afforded a nearby facility while changing clothes caused her to miss pre-game team meetings and placed her on a different status than the male hockey players, thus depriving her of the comradery of the team, and that her separation from the team negatively impacted on her psychological well-being.

The district court concluded that Sullivan's claims of unequal treatment were without constitutional merit because the facility in which she changed clothes was substantially equal to that in which the male hockey players changed clothes.

On review of a district court's dismissal pursuant to Fed.R.Civ.P. 41(b), a court of appeals "may only reverse the trial court's findings of fact if they are clearly erroneous." *Continental Casualty Co. v. DLH Serv., Inc.,* 752 F.2d 353, 356 (8th Cir.1985). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

The district court made the following findings which we determine are supported by evidence in the record as indicated in brackets:

It should be here noted that the term "locker room", as used in this case, is for the most part a misnomer, for there are

---

1. Rule 41(b) provides, in pertinent part:

    After the plaintiff, in an action tried by the court without a jury, has completed the presentation of evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts

    may then determine them and render judgment against the plaintiff....

2. Sullivan's 42 U.S.C. § 1983 claim is wholly dependent upon her fourteenth amendment equal protection claim. *Bier v. Fleming,* 717 F.2d 308, 310 (6th Cir.1983), *cert. denied,* 465 U.S. 1026, 104 S.Ct. 1283, 79 L.Ed.2d 686 (1984). Therefore, our ruling on her constitutional claim also disposes of her § 1983 claim.

no lockers in the locker room area. The hockey players merely lay their clothing and belongings on the benches provided within the locker room area. Coaches are provided with a key to the locker room area so that they may lock the door to restrict entrance while the players are on the ice. [Tr.[3] at 20.] There is also no indication that the plaintiff, once she has changed, is required to leave her belongings unattended or unguarded in the ladies [sic] restroom, or that she is not permitted to place her belongings in the locker room area with those of the other players. Additionally, there is no evidence that the locker room area contains any shower facilities, or if the area is equipped with shower facilities, that any of the team members use them.... The Court finds that in comparing the facilities contained in the locker room to those contained in the ladies' restroom and room attached thereto, the one is the functional equivalent of the other.

Although the plaintiff now complains that the current arrangement leaves her in a precarious position fraught with danger and lacking in supervision, the Court finds that these arrangements are entirely suitable. The plaintiff would have this Court believe that because she is required to change in the ladies' restroom at the front of the Pavilion, some one hundred to one hundred fifty feet from the locker locker room area, she has been banished from the ice rink, ostracized from her teammates and coaches, and generally sent forth to fend for herself against all the world without supervision or protection. The Court finds these contentions entirely without merit. In addition to changing clothes, the locker rooms are used for team meetings, both before and after the games. [Tr. at 19–20.] Both Zarnoch and Hrabak, who have coached the plaintiff in the past,

testified, and plaintiff did not dispute, that they were not only aware that the plaintiff was a girl, but that they made a conscious and concerted effort not to start any team meetings or engage in any activity, other than changing clothes, without the plaintiff's presence. [Tr. at 105, 110.] Additionally, the ladies' restroom utilized by the plaintiff is not an isolated area. This general area also contains a ticket office, an information booth, a kitchen and refreshment area, a first aid room, a men's restroom, and a large public area used by many patrons, both male and female, as a place to put on their skates. [Tr. at 32–33, 35.]

Finally, there was no evidence of any kind to establish that the Pavilion or the area described above has been the scene of any ... violence, assaults, or threats that would in any way endanger the safety or well being [sic] of the plaintiff. [Tr. at 32, 97.] Moreover, plaintiff has neither alleged nor presented evidence of any incident which could have caused her to feel or believe that she was in any way threatened or in peril.

Joint Appendix at 53–55.

We are of the opinion, based on the evidence before the district court, that these factual findings are not clearly erroneous and that, therefore, the finding that the facility afforded to Sullivan was substantially equal to the locker room utilized by the boys on her team is correct. Since we conclude that Sullivan was not accorded treatment unequal to that of the male hockey players, it is unnecessary to consider whether the difference in the facilities was substantially related to an important objective.[4]

Accordingly, we AFFIRM the district court's dismissal of Sullivan's gender discrimination suit.

---

**3.** "Tr." refers to the transcript of the January 14, 1987 proceedings before the district court.

**4.** Defendant City of Cleveland Heights also contended that it could be liable under § 1983 only if the alleged unconstitutional treatment of Sullivan resulted from official action or policy of the city, *Monell v. Department of Social Serv.,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035–36, 56

L.Ed.2d 611 (1978), and that there is no evidence that the city in any way approved of the alleged denial of equal treatment here. The district court did not rule on this contention. We need not resolve this issue in any case since we approve the decision of the district court on other grounds.

JONES, Circuit Judge, dissenting.

A review of the record in this case shows that Sullivan was virtually left alone to change her clothing in a female restroom, located approximately 100 to 150 feet from the boys' locker area. Defendant Zarnoch testified that he did not know where Sullivan dressed during the time he coached her, *see* j. app. at 181, and Assistant Commissioner Shaw testified that "no specific supervision" for athletes is provided outside the locker area. *Id.* at 126. The record shows that the changing area provided to Sullivan is easily accessible to the general public. In fact, Shaw stated that because of the past history "of acts of vandalism and smoking," the female restroom is without a door. *Id.* at 139. In contrast, the boys' locker room is off limits to the general public, as mandated by league rule, and the "[l]ocker room[ ] [must] be kept locked at all times when a Coach is not present." *Id.* at 212 (quoting League Rule 8.13). Finally, the hockey league rules expressly state that coaches are responsible for all children participating in the league. *See id.* at 209 (citing League Rule 8.9(e)). However, despite this overwhelming evidence that Sullivan received inadequate supervision and that her changing facilities were manifestly inferior to those enjoyed by her male counterparts, the district court concluded that the defendants provided her with "functional[ly] equivalent" facilities. *Id.* at 54. Given the record in this case, I am left with the "definite and firm conviction" that the district court erred in making this determination. *Anderson v. Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

Under *Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976), in order for a gender based classification to withstand constitutional scrutiny, that classification must "serve important governmental objectives and must be substantially related to the achievement of those objectives." *Id.* at 197, 97 S.Ct. at 457. In this case, because the district court found that Sullivan was not afforded differential treatment because of her gender, the court did not address whether the differences in the fa-cilities closely served important governmental objectives. In my view, because Sullivan was clearly disadvantaged by a sex-based classification, the defendants were required to advance an "exceedingly persuasive justification" for their actions. *Mississippi University for Women v. Hogan,* 458 U.S. 718, 724, 102 S.Ct. 3331, 3336, 73 L.Ed.2d 1090 (1982). Since I discern no such justification from the record and an "appellate court may not conduct a *de novo* review" regarding findings of discrimination, I would reverse and remand for further proceedings concerning this question. *United States v. Yonkers Bd. of Education,* 837 F.2d 1181, 1218 (2d Cir. 1987), *cert. denied,* — U.S. —, 108 S.Ct. 2821, 100 L.Ed.2d 922 (1988).