878 F.2d 254
 131 L.R.R.M. (BNA) 2785, 112 Lab.Cas. P 11,369,
14 Fed.R.Serv.3d 717
 The INDEPENDENT FEDERATION OF FLIGHT ATTENDANTS, an
unincorporated labor organization; Valerie Collins-Coady,
Margaret A. Hartz, Cuky P. Harvey, Bruce Kenneth Palmer,
Beonca Es Landa Rist, Nancy Wright, individually and as a
class; Elizabeth Rich-Louklelis, individually and as a
class; and Michael Alex McDermott, individually and as a
class, Appellants,
v.
TRANS WORLD AIRLINES, INC.; and The TWA Group Benefits Plan
for Flight Attendants: Connecticut General Life
Ins. Co.; Total Health Care: N.J.
Stafford, Wilma Righter, Craig
Mudge, Appellees.
 No. 88-1984.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 12, 1989.
Decided June 28, 1989.
Rehearing and Rehearing En Banc Denied Aug. 16, 1989.
 
 William A. Jolley, Kansas City, Mo., for appellants.
 Murray Gartner, New York City, for appellees.
 Before FAGG, Circuit Judge, FLOYD R. GIBSON, and TIMBERS,* Senior Circuit Judges.
 PER CURIAM.
 
 
 1
 The Independent Federation of Flight Attendants (IFFA) brought this class action on behalf of its members against Trans World Airlines, Inc. (TWA) seeking, among other things, reinstatement, backpay, and other benefits for former strikers. After lengthy proceedings on this aspect of IFFA's complaint, the district court issued a comprehensive decision granting TWA's motion under Federal Rule of Civil Procedure 41(b) to dismiss this claim at the close of IFFA's evidence. See Independent Fed'n of Flight Attendants v. Trans World Airlines, Inc., 682 F.Supp. 1003, 1006 (W.D.Mo.1988). IFFA appeals, and we affirm.
 
 
 2
 Since 1978, IFFA has been the collective bargaining representative for approximately 6000 TWA flight attendants. Renegotiation of the parties' collective bargaining agreement began in 1981 and eventually proceeded under supervision by the National Mediation Board (NMB). The NMB released the parties from formal bargaining in February 1986. IFFA filed this action seeking an injunction under the Railway Labor Act (RLA), 45 U.S.C. Secs. 151-188 (1982), to prevent TWA from implementing its proposed wage and work rule changes. Continued negotiations eventually failed, and the flight attendants went on strike. TWA operated in the interim with replacement workers. Two months later, IFFA offered to return to work, unconditionally accepting TWA's proposals. TWA reinstated some, but not all, of the former strikers.
 
 
 3
 Legal questions in this case have twice before reached our court and the United States Supreme Court. See Independent Fed'n of Flight Attendants v. Trans World Airlines, Inc., 819 F.2d 839 (8th Cir.1987), rev'd, --- U.S. ----, 109 S.Ct. 1225, 103 L.Ed.2d 456 (1989) (Court reviewing only effect of seniority on striker reinstatement); Trans World Airlines, Inc. v. Independent Fed'n of Flight Attendants, 809 F.2d 483 (8th Cir.1987) (effect of strike on union security clause), aff'd by an equally divided Court, 485 U.S. 175, 108 S.Ct. 1101, 99 L.Ed.2d 150 (1988) (per curiam). The present appeal comes to us following thirty-one days of trial in which IFFA presented its evidence.
 
 
 4
 In broad terms, IFFA's theory in the district court was that TWA bargained in bad faith. IFFA claimed TWA consequently failed to carry out its obligation under the Railway Labor Act "to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes," 45 U.S.C. Sec. 152 First. See Chicago & N.W. Ry. v. United Transp. Union, 402 U.S. 570, 577, 581, 91 S.Ct. 1731, 1735, 1737, 29 L.Ed.2d 187 (1971). IFFA made a number of specific allegations of TWA's bad-faith bargaining, including: failing to provide requested information concerning bargaining proposals; dealing with a union other than the flight attendants' authorized bargaining representative; making impermissible agreements with flight attendant trainees before the strike; bargaining to impasse on a nonmandatory subject of bargaining; adopting a negotiating posture that showed bad faith, intent not to reach agreement, and sexual discrimination; and maintaining that negotiating posture in a manner that prolonged the strike.
 
 
 5
 IFFA further asserted that because TWA's prohibited conduct caused and ultimately prolonged the strike, IFFA members were unfair labor practice--rather than economic--strikers. See Mastro Plastics Corp. v. NLRB, 350 U.S. 270, 76 S.Ct. 349, 100 L.Ed. 309 (1956). On this basis, IFFA contended the flight attendants were entitled to relief analogous to that available for unfair labor practice strikers under the National Labor Relations Act (NLRA), 29 U.S.C. Secs. 141-187 (1982). TWA defended its negotiating conduct and, in addition, argued that NLRA concepts relating to unfair labor practice strikes did not provide a source of relief under the RLA.
 
 
 6
 After "attentively listen[ing] to the evidence and oral arguments * * * comprising some 7,000 pages of transcript and * * * immers[ing] itself in documents and designations from depositions not read into evidence," Independent Fed'n of Flight Attendants, 682 F.Supp. at 1006, the district court rejected all of IFFA's contentions. In doing so, the court assumed without deciding that NLRA principles concerning unfair labor practice strikes applied to IFFA's claim. See id. at 1022.
 
 
 7
 The district court's decision contains several key determinations. First, the court held the disparity between the parties' bargaining positions, and not missing or misstated information, was the real barrier to agreement and the sole cause of the strike. See id. at 1013-16, 1024-25. In addition, the court ruled that economic considerations, rather than sexual discrimination, were the cause of the bargaining positions TWA took. See id. at 1010-11, 1029-32. The court also held TWA did not engage in sham or surface bargaining. See id. at 1016, 1029. Finally, the district court determined TWA's general bargaining tactics were not in bad faith, see id. at 1025-27, and that its poststrike conduct did not prolong the strike, id. at 1017. Based on these determinations, the district court granted TWA's rule 41(b) motion to dismiss and denied IFFA's claim for general reinstatement. Id. at 1006.
 
 
 8
 IFFA's arguments on appeal essentially express its dissatisfaction with the district court's decision to evaluate the evidence in a manner that does not coincide with its own. In considering a rule 41(b) motion in a bench trial, however, the district court is entitled "to assess the credibility of witnesses and the evidence and to determine that the plaintiff has not made out a case." Continental Casualty Co. v. DLH Servs., Inc., 752 F.2d 353, 356 (8th Cir.1985). On review of a decision to grant the motion, we "may not try the case de novo or pass on the credibility of witnesses, but may only reverse the trial court's findings of fact if they are clearly erroneous." Id. (italics omitted).
 
 
 9
 Initially, we decline in this case to express a definitive view on TWA's contention that NLRA principles of relief for unfair labor practice strikers are not available in RLA proceedings. Like the district court, we instead assume for purposes of reviewing this case that NLRA concepts may be applied in these circumstances. On that basis, we have carefully reviewed IFFA's contentions in light of the district court's thorough decision, the record, and the parties' arguments. Having done so, we conclude the district court's decision rests on findings of fact that are not clearly erroneous, and no reversible error otherwise appears.
 
 
 10
 Thus, we affirm the district court's decision granting TWA's rule 41(b) motion. We also deny TWA's motion to strike portions of the appendix IFFA filed in connection with this appeal.
 
 
 
 *
 The HONORABLE WILLIAM H. TIMBERS, Senior United States Circuit Judge for the Second Circuit Court of Appeals, sitting by designation