97 F.3d 1452
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Elaine JACHYRA, Plaintiff-Appellant,
v.
CITY OF SOUTHFIELD, a Municipal Corporation, Defendant-Appellee.
 No. 95-1009.
 United States Court of Appeals, Sixth Circuit.
 Sept. 12, 1996.
 
 Before: KENNEDY, WELLFORD, and MOORE, Circuit Judges.
 OPINION
 MOORE, Circuit Judge.
 
 
 1
 Appellant Elaine Jachyra appeals the district court's grant of summary judgment in favor of Appellee, the City of Southfield ("Southfield"), dismissing her federal claims under 42 U.S.C. §§ 1981 and 1983, and her two state law claims for sex discrimination under the Michigan Elliott-Larsen Civil Rights Act ("MELCRA") and for intentional infliction of emotional distress. Jachyra claims that Southfield discriminated against her because of her sex by removing her from the eligibility list for the position of entry-level firefighter in the Southfield Fire Department since she disclosed during the psychological interview portion of the application process that she had been raped more than ten years earlier. For the following reasons, we affirm.
 
 I. BACKGROUND
 
 2
 Jachyra was among over 1,200 candidates who applied for fifteen entry-level firefighter positions in Southfield's Fire Department. A total of 403 applicants successfully completed all of the requirements to be placed on the eligibility list for the fifteen firefighter positions. Forty-four applicants, who had passed the initial screening and tests, were scheduled for clinical psychological testing and background checks. Among the fifteen firefighters hired, three were women. Jachyra successfully completed every aspect of the application process except the psychological evaluation. Southfield contracted with a psychological testing service to conduct this portion of the application process. In addition to administering several psychological tests to the candidates, psychologist Dr. Harley Stock interviewed each candidate. Based upon Dr. Stock's evaluation, Jachyra was removed from the eligibility list. Jachyra appealed to the City of Southfield Police and Fire Civil Service Commission (the "Civil Service Commission"), which sustained Southfield's determination.
 
 
 3
 Southfield claims that it removed Jachyra from the eligibility list based on Dr. Stock's conclusion that Jachyra was "unsuitable" for a position as a firefighter because she had post-traumatic stress disorder ("PTSD") as a result of having been raped over ten years earlier. Dr. Stock determined that Jachyra's PTSD would have made it difficult for her to cope in a group living situation and handle the trauma a firefighter must face as part of her job. J.A. at 179. Dr. Stock made this determination despite the fact that Jachyra had been employed as an emergency medical service technician ("EMT") for the City of Detroit Fire Department for five years. J.A. at 181. Nonetheless, he opted not to delve into Jachyra's work experience as an EMT during the psychological interview because it was clear to him that she needed treatment. J.A. at 181-82. Dr. Stock qualified his rating of Jachyra by explaining to Southfield that her PTSD did not render her permanently unsuitable because she could undergo treatment. J.A. at 180.
 
 
 4
 Jachyra subsequently sought treatment with Dr. Gayle Beck, a clinical psychologist. Dr. Beck initially did not challenge Dr. Stock's PTSD diagnosis, but she eventually "modified" the diagnosis to "adjustment reaction with mixed features of anxiety and depression," which "has to do with the ability to adjust to a current life situation, responsibilities of adult life." J.A. at 192. Dr. Beck noted that Jachyra also had some personal family problems when her mother became terminally ill while Dr. Beck was treating Jachyra. J.A. at 193. Dr. Beck testified in her deposition that not all victims of PTSD react the same way to traumatic situations after the initial trauma. J.A. at 190. For example, Dr. Beck suggested that a person who has been raped might experience trauma in a one-to-one interpersonal situation whereas a victim of a war crime might experience trauma in a crowd. Moreover, Dr. Beck described a phenomenon called "disassociation" whereby people who have experienced personal traumas can "separate themselves from a traumatic situation, so that they can get through minor traumas in their life using this skill." J.A. at 194. According to Dr. Beck, Jachyra's rape "didn't seem to relate to her present work" as an EMT, J.A. at 191, and this work experience would be relevant to predict her ability to function as a firefighter. J.A. at 196.
 
 
 5
 Jachyra contends that Southfield has a policy of rejecting every applicant who has been raped and that Mary Potts, one of the three women firefighters hired by Southfield, would "testify that she was advised by the City when they learned, subsequent to her being hired, that she had be [sic] sexually assaulted, that had the City known she had been sexually assaulted, she would have never been hired because she would not have passed the psychological testing aspects of the City's application process." Response to Motion for Summary Judgment at 15, J.A. at 144. However, there is no statement in the record to this effect.[1] Jachyra attaches a portion of a transcript from a state-court action in Oakland County, Michigan, in which Potts responds to questioning regarding why she did not state that she had been sexually assaulted in her application for the Southfield fire department. Potts states that she thought a sexual assault was irrelevant to her ability to be a firefighter and therefore did not include the information where the application called for information about the applicant's mental condition. J.A. at 166-71. Potts testified that she had been raped, J.A. at 170, but the transcript does not state that she was terminated when Southfield discovered that she had been raped or that Potts was told by a Southfield official that she would never have been hired had she disclosed the fact that she had been raped in her application or during her interview with Dr. Stock.
 
 
 6
 The district court found that Jachyra did not state a prima facie case of sex discrimination because she failed to establish her eligibility for the position in question. The district court reasoned that Jachyra provided no evidence "to support any assertion that the evaluation was discriminatory in any way or that the criteria used by the Police and Fire Civil Service Commission were applied differently to [her] than to other applicants." See District Court Order dated December 1, 1994. Alternatively, the district court found that even if Jachyra had proven her eligibility, Southfield established objective reasons for not hiring her that Jachyra did not show were pretextual. Id.
 
 II. STANDARD OF REVIEW
 
 7
 We review a district court's grant of summary judgment de novo, applying the same test that the district court utilizes. Adkins v. United Mine Workers, 941 F.2d 392, 399 (6th Cir.1991), cert. denied, 502 U.S. 1098 (1992). Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."
 
 III. ANALYSIS
 A. Section 1981 Claim
 
 8
 Jachyra argues that the district court erred by granting summary judgment on her § 1981 claim. Section 1981 provides that all persons shall have the same right to make and enforce contracts, and to enjoy all conditions of the contractual relationship regardless of race. 42 U.S.C. § 1981. Jachyra cannot state a claim under § 1981 because claims of sex discrimination are not cognizable under this section. Runyon v. McCrary, 427 U.S. 160, 167 (1976); St. Louis v. Alverno College, 744 F.2d 1314, 1317 (7th Cir.1984) ("claims of sex discrimination are not cognizable under § 1981"); DeGraffenreid v. General Motors Assembly Div., 558 F.2d 480, 486 n. 2 (8th Cir.1977) (same). Accordingly, we affirm the district court's grant of Southfield's motion for summary judgment on this claim.
 
 B. Section 1983 Claim
 
 9
 Jachyra argues that the district court improperly granted summary judgment on her § 1983 claims, which alleged that Southfield's application procedure violated her right to equal protection and her property interest in public employment.[2] "To successfully state a claim under 42 U.S.C. § 1983, a plaintiff must identify a right secured by the United States Constitution and the deprivation of that right by a person acting under color of state law." Adams v. Metiva, 31 F.3d 375, 386 (6th Cir.1994) (citation omitted). Moreover, where the defendant is a municipality, the plaintiff must show that the defendant's objectionable actions were made pursuant to an official city policy or custom. Monell v. Department of Social Servs., 436 U.S. 658, 691, 694 (1978).
 
 1. Equal Protection Claim
 
 10
 Jachyra claims that Southfield denied her equal protection by discriminating against her because of her sex. "To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." Henry v. Metropolitan Sewer Dist., 922 F.2d 332, 341 (6th Cir.1990) (citation omitted). The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o state shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. It is "essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). Thus, the threshold element of an equal protection claim is disparate treatment. Once disparate treatment is shown, classifications based on sex "must serve important government objectives and must be substantially related to achievement of those objectives." Sullivan v. City of Cleveland Heights, 869 F.2d 961, 963 (6th Cir.1989) (quoting Craig v. Boren, 429 U.S. 190, 197 (1976)).
 
 
 11
 To prove a violation of the equal protection clause under § 1983, Jachyra must prove the same elements as are required to establish a disparate treatment claim under Title VII, i.e., under the McDonnell Douglas/Burdine framework. See Gutzwiller v. Fenik, 860 F.2d 1317, 1325 (6th Cir.1988). Therefore, Jachyra must state a prima facie case of sex discrimination by showing (1) that she is a member of a protected group, (2) that she applied for and was qualified for a job for which the employer was seeking applicants, (3) that she was rejected despite her qualifications, and (4) that the employer hired a person with lesser qualifications or alternatively, that she was treated worse than "a similarly situated non-protected" person. Gafford v. General Elec. Co., 997 F.2d 150, 167 n. 9 (6th Cir.1993); Mitchell v. Toledo Hosp., 964 F.2d 577, 582 (6th Cir.1992) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), and Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 255-56 (1981)); Shah v. General Elec. Co., 816 F.2d 264, 268 (6th Cir.1987); Grano v. Department of Dev. of Columbus, 637 F.2d 1073, 1079-81 (6th Cir.1980). Cf. O'Connor v. Consolidated Coin Caterers Corp., 116 S.Ct. 1307, 1310 (1996) (holding that "[b]ecause it lacks probative value, the fact that an ADEA plaintiff was replaced by someone outside the protected class is not a proper element of the McDonnell Douglas prima facie case").
 
 
 12
 Once a plaintiff has established a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for rejecting the plaintiff. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981). If the defendant offers a legitimate reason, the burden of production shifts back to the plaintiff to demonstrate that the discrimination was a determinative factor in the plaintiff's termination. McDonnell Douglas, 411 U.S. at 804-05. The plaintiff may meet this burden by showing (1) that the stated reasons had no basis in fact, (2) that the stated reasons were not the actual reasons, or (3) that the stated reasons were insufficient to explain the employer's action. Wheeler v. McKinley Enters., 937 F.2d 1158, 1162 (6th Cir.1991). The burden of persuasion, however, always remains with the plaintiff. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993).
 
 
 13
 Under Title VII, a plaintiff may prove discrimination based on "disparate treatment," which requires proof of an employer's discriminatory motive, or "disparate impact," which results from facially neutral employment practices that have a disproportionately negative effect on certain protected groups that cannot be justified by business necessity. See Huguley v. General Motors Corp., 52 F.3d 1364, 1370 (6th Cir.1995). Unlike disparate treatment, proof of disparate impact "does not require a showing of discriminatory motive, since the claim is based on statistical evidence of systematic discrimination (i.e., a pattern or practice which results in discrimination)." Id. However, a § 1983 claim cannot be based on a disparate impact analysis because proof of discriminatory intent is required. Washington v. Davis, 426 U.S. 229, 244-45 (1976); Copeland v. Machulis, 57 F.3d 476, 481 (6th Cir.1995) ("mere disparate impact is insufficient to demonstrate an equal protection violation"). Although disparate impact may be considered as part of a plaintiff's proof in a disparate treatment case, it is not sufficient alone to state a claim under § 1983.
 
 
 14
 Jachyra has not made out a disparate treatment claim because she did not establish that Southfield intentionally discriminated against her because she is a woman (or even because she is a rape victim). Southfield claims that it removed Jachyra's name from the eligibility list because Dr. Stock found that she had PTSD, not because she had been raped. Jachyra has not shown that any individual with PTSD has been hired as a firefighter, a fact which might indicate that Southfield's justification is false or pretextual. Nor has Jachyra shown that male applicants were treated more favorably in the psychological interview, e.g., asked less probing questions. Therefore, the district court did not err by granting summary judgment against Jachyra on her § 1983 equal protection claim because she failed to show that Southfield intentionally discriminated against her based on membership in a particular class.
 
 2. Due Process Claim
 
 15
 Jachyra also asserts a property interest in public employment with the Southfield Fire Department and claims that she was denied the position of firefighter without due process in violation of § 1983. Property interests are not created by the due process clause of the Constitution; rather they "stem from an independent source such as state law--rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Board of Regents v. Roth, 408 U.S. 564, 577 (1972). Furthermore, the mere expectation of a property right is not sufficient:
 
 
 16
 To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.
 
 
 17
 Id. Moreover, "[o]nly when a violation of state law results in an infringement of a federally protected right can a [§ 1983] cause of action be said to exist." Missouri ex rel. Gore v. Wochner, 620 F.2d 183, 185 (8th Cir.), cert. denied, 449 U.S. 875 (1980).
 
 
 18
 Michigan law states that firefighters shall be hired "only according to qualifications and fitness to be ascertained by competitive examinations." MICH.COMP.LAWS § 38.507; see MICH.COMP.LAWS § 38.512 (describing requirements for examinations). Since Jachyra did not successfully complete the psychological examination, she cannot establish an entitlement to the position she sought. Moreover, even applicants who successfully completed all of the requirements and therefore remained on the eligibility list had no property right in the position since the number of qualified applicants significantly exceeded the number of available positions. In fact, applicants were notified in writing that completion of testing or other progress in the application process should not be understood as "an offer or guarantee of employment." Accordingly, Jachyra failed to establish a vested property interest.
 
 
 19
 Even if Jachyra had established a property interest in the position of firefighter, however, Southfield argues that Jachyra was afforded any process that was due. Southfield notified Jachyra of her right to appeal the Fire Department's decision to the Police and Fire Civil Service Commission. She was informed that at the hearing she could be represented by an attorney and present witnesses and medical information or facts. Southfield also notified Jachyra that she could have access to her records and the opportunity to examine the City's retained psychologist. Jachyra did appeal the removal of her name from the list of qualified applicants, and the hearing panel sustained the City's decision finding Jachyra ineligible. This process protected any due process rights Jachyra may have had. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985) (holding that public employees with a property interest in their positions are entitled to notice and an opportunity to respond prior to discharge). The Supreme Court has summarized the essential requirements of procedural due process:
 
 
 20
 The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement.... [A person is also] entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story.
 
 
 21
 Id. (internal citation omitted). Therefore, we affirm the district court's grant of summary judgment on Jachyra's § 1983 procedural due process claim.
 
 C. Michigan Elliott-Larsen Civil Rights Act
 
 22
 Jachyra claims that the district court erred in granting summary judgment on her sex discrimination claim under the Michigan Elliott-Larsen Civil Rights Act ("MELCRA"), which provides that:
 
 
 23
 An employer shall not do any of the following:
 
 
 24
 (a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.
 
 
 25
 MICH.COMP.LAWS § 37.2202(1)(a). Jachyra's MELCRA claim essentially repeats her equal protection claims under § 1983. See Rabidue v. Osceola Ref. Co., 805 F.2d 611, 617 (6th Cir.1986) (finding that the language of MELCRA essentially tracks the disparate treatment language of Title VII and that the Michigan Civil Rights Commission has issued interpretive regulations indicating that Title VII should be used as a guide in the interpretation of MELCRA), cert. denied, 481 U.S. 1041 (1987), abrogated on other grounds, Harris v. Forklift Sys., Inc., 510 U.S. 17 (1993). To the extent Jachyra's state law MELCRA claim overlaps with her § 1983 claims, we affirm the district court's grant of summary judgment for the reasons stated above.
 
 
 26
 However, in contrast to a § 1983 plaintiff, a plaintiff may prove a violation of MELCRA based on a claim of disparate impact. Singal v. General Motors Corp., 447 N.W.2d 152, 155-56 (Mich.Ct.App.1989) (stating that a prima facie case under MELCRA can be made by showing disparate impact, which requires the plaintiff to show that a facially neutral employment practice burdens a protected class more harshly than others). To establish a prima facie case of disparate impact, Jachyra must show that the application process results in the selection of disproportionately fewer women compared to the pool of applicants or potential applicants.[3] See Smith v. Consolidated Rail Corp., 425 N.W.2d 220, 222 (Mich.Ct.App.1988) (discussing requirements for disparate impact based on race). If the plaintiff states a prima facie case of disparate impact, the employer must then meet the burden of showing that the screening tests or job requirements have a "manifest relationship to the employment in question." Id. (quoting Albemarle Paper Co. v. Moody, 422 U.S. 405, 425 (1975)).
 
 
 27
 Southfield claims that it refused to hire Jachyra because Dr. Stock found she had PTSD, not because she had been raped. Jachyra has failed to present either direct or statistical evidence of disparate impact. She has not shown that Southfield hired any male applicant with PTSD or that other female applicants with PTSD were not hired. She did not even attempt to prove that Dr. Stock asked only female applicants whether they had been raped or sexually assaulted. The basic problem for Jachyra is that she did not produce any of this type of evidentiary material to support her claims.
 
 
 28
 Finally, three of the fifteen applicants hired were women. Thus, women comprised twenty percent of the firefighters hired. Jachyra has not presented evidence regarding the number of women who applied,[4] or the composition of the Southfield work force in general. Although proportional hiring will not immunize an employer for specific acts of discrimination, Furnco Constr. Corp. v. Waters, 438 U.S. 567, 579 (1978), it is significant absent other evidence of discrimination. Because Jachyra failed to prove a prima facie case of disparate impact and based on the analysis of her disparate treatment claim in Part III.B.1. above, we affirm the district court's grant of summary judgment in favor of Southfield on Jachyra's MELCRA claim.
 
 
 29
 D. Intentional Infliction of Emotional Distress
 
 
 30
 Jachyra also claims that the district court erred by dismissing her claim for intentional infliction of emotional distress under Michigan law.
 
 1. Governmental Immunity under Michigan Law
 
 31
 Southfield argues that Jachyra's claim of intentional infliction of emotional distress is barred by governmental immunity under Michigan law, which provides that:
 
 
 32
 Except as otherwise provided in this act, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function.
 
 
 33
 MICH.COMP.LAWS § 691.1407(1). "To determine whether a governmental agency is engaged in a governmental function, the focus must be on the general activity, not the specific conduct involved at the time of the tort." Pardon v. Finkel, 540 N.W.2d 774, 776 (Mich.Ct.App.1995). The rationale for this rule is that using "anything other than the general activity standard would all but subvert the broad governmental immunity intended by the Legislature [because] it would be difficult to envision a tortious act that is a governmental function." Smith v. Department of Pub. Health, 410 N.W.2d 749, 779 (Mich.1987) (Brickley, J., concurring), aff'd sub nom. Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989); see Jackson v. City of Detroit, 537 N.W.2d 151, 154 (Mich.1995) (describing governmental immunity as "very broad").
 
 
 34
 "A governmental function is an activity expressly or impliedly mandated or authorized by the constitution, statute, or other provision of law." Payton v. City of Detroit, 536 N.W.2d 233, 241 (Mich.Ct.App.1995) (citation omitted), leave to appeal denied, 551 N.W.2d 187 (Mich.1996). In the instant case, the hiring of candidates for entry-level firefighter positions is a governmental function prescribed by Michigan statutes. See MICH.COMP.LAWS § 38.507 (providing that appointments to a paid fire department of a municipality must be made "only according to qualifications and fitness to be ascertained by competitive examinations" and according to the terms of this statute); MICH.COMP.LAWS § 38.512 (providing that "[a]ll examinations for positions shall be practical in their character and shall relate to those matters and shall include those inquiries as will fairly and fully test the comparative merit and fitness of the persons examined to discharge the duties of the employment sought by them."). Accordingly, we affirm, based on governmental immunity, the district court's dismissal of Jachyra's claim of intentional infliction of emotional distress.
 
 
 35
 2. Merits of the Intentional Infliction of Emotional Distress Claim
 
 
 36
 Alternatively, we affirm the district court's grant of summary judgment on the merits of the claim. To withstand a motion for summary judgment on a claim for intentional infliction of emotional distress under Michigan law, a plaintiff must produce evidence of (1) " 'extreme and outrageous' conduct," (2) "defendants' injurious intent or reckless disregard for the consequences of their acts," (3) "causation," and (4) "the actual experiencing of severe distress." Holmes v. Allstate Ins. Co., 326 N.W.2d 616, 619 (Mich.Ct.App.1982); see Roberts v. Auto-Owners Ins. Co., 374 N.W.2d 905, 908 (Mich.1985) (citing same four elements); Ledsinger v. Burmeister, 318 N.W.2d 558, 561 (Mich.Ct.App.1982). The Michigan Supreme Court has recognized the definition of intentional infliction of emotional distress set forth in the Restatement (Second) of Torts:
 
 
 37
 Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"
 
 
 38
 Roberts, 374 N.W.2d at 908-09 (citing RESTATEMENT (SECOND) OF TORTS § 46, comment d, at 72-73). Jachyra's claim of intentional infliction of emotional distress fails because the lawful removal of one's name from an eligibility list cannot constitute outrageous conduct.
 
 IV. CONCLUSION
 
 39
 Finding no error, we AFFIRM the district court's decision granting Southfield's motion for summary judgment in all respects.
 
 
 
 [1]
 Jachyra's brief in response to Southfield's motion for summary judgment refers to the attached affidavit of Mary Potts. J.A. at 144. However, we have been unable to locate this affidavit in the record. We note that Southfield's reply brief states that its response is limited because the Potts affidavit was not provided despite requests for the missing document. Reply brief at 1
 
 
 [2]
 Section 1983 provides:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
 
 
 [3]
 The Supreme Court stated in Dothard v. Rawlinson, 433 U.S. 321 (1977), that "[t]here is no requirement ... that a statistical showing of disproportionate impact must always be based on analysis of the characteristics of actual applicants." Id. at 330 (reasoning that "otherwise qualified people might be discouraged from applying because of a self-recognized inability to meet the very standards challenged as being discriminatory"). But Dothard involved a challenge to explicit height and weight requirements for applicants for the position of correctional counselor at a state penitentiary. In contrast, the instant case does not involve an explicit policy excluding rape victims or persons with PTSD
 
 
 [4]
 Among the forty-four applicants interviewed by Dr. Stock, only eight, or eighteen percent, were women. Therefore, based on the psychological portion of the application process, the number of women hired appears roughly to match the percentage of women who had met the other requirements for the position of entry-level firefighter in Southfield. See City of Southfield 1990 Firefighter Recruitment Disposition of All Applicants who were Given Psychological, Exhibit E to Southfield's brief in support of its motion for summary judgment