SMITH v CONSOLIDATED RAIL CORPORATION

Docket No. 92746. Submitted October 7, 1987, at Detroit. Decided
        June 6, 1988.
    James W. Smith and three others were employed by Consolidated
        Rail Corporation as track foremen who were temporarily dis-
        qualified from working because of failing marks on an examina-
        tion administered by their employer. Smith and the others
        brought an action in the Wayne Circuit Court against ConRail
        and others alleging disparate impact and disparate treatment
        under the Civil Rights Act. The court, John H. Hausner, J.,
        granted summary disposition for defendants. Plaintiffs ap-
        pealed.
        The Court of Appeals *held:*
        1. The court, in analyzing the disparate impact claim, cor-
        rectly considered the number of individuals tested rather than
        the number of tests taken.
        2. The trial court correctly found that plaintiffs did not
        establish a prima facie case of disparate impact.
        3. Plaintiffs were wrong in their claim that two of their tests
        were improperly scored.
        4. Conclusory allegations of discrimination in favor of one
        white employee were not sufficient to rebut evidence of nondis-
        criminatory conduct.
        Affirmed.
        SHEPHERD, J., dissented. He would hold that the evidence
        that one of the plaintiffs saw one of the defendants fill in test
        answers for a white employee raises an issue that should go to
        the trier of fact. He would reverse and remand for trial on that
        issue.

1. CIVIL RIGHTS — DISPARATE IMPACT — DISPARATE TREATMENT.
    Two theories of recovery, disparate impact and disparate treat-
        ment, have been recognized under the federal and state civil
        rights acts (42 USC 2000e-2; MCL 37.2202; MSA 3.548[202]).

REFERENCES
Am Jur 2d, Civil Rights §§ 121-128.
See the Index to Annotations under Civil Rights; Discrimination.

2. Civil Rights — Disparate Impact.

In order to establish a prima facie case of disparate impact of tests administered by an employer, the plaintiffs must show that the tests in question select applicants for hire or promotion in a racial pattern significantly different from that of the pool of applicants; once plaintiffs make this showing, the employer must meet the burden of showing that the tests have a manifest relationship to the employment in question.

3. Civil Rights — Disparate Treatment.

Disparate treatment for purposes of the Civil Rights Act is shown by showing that the plaintiff was a member of a class entitled to protection under the act and that, for the same or similar conduct, he was treated differently than one who was a member of a different race.

*Kelman, Loria, Downing, Schneider & Simpson* (by *Michael L. Pitt*), for plaintiff.

*Dickinson, Wright, Moon, Van Dusen & Freeman* (by *Thomas G. Kienbaum* and *Michael A. Alaimo*), for defendant.

Before: D. E. Holbrook, Jr., P.J., and Shepherd and D. L. Sullivan,* JJ.

D. L. Sullivan, J. Plaintiffs appeal from an April 15, 1986, order granting summary disposition and dismissing plaintiffs' employment discrimination action. We affirm.

Plaintiffs are four black employees of defendant Consolidated Rail Corporation. Each was temporarily disqualified from work as track foreman because of a failing mark on an examination (the "MW Examination") administered by defendant between November 26, 1982, and November 12, 1984. Plaintiffs claim that the test, which was required to qualify for track foreman, had a disparate impact on defendant's black employees. Plaintiffs also claim disparate treatment in the manner

* Circuit judge, sitting on the Court of Appeals by assignment.

in which the test was administered and graded. Both claims are brought under the state Civil Rights Act, MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.*

The pertinent facts are as follows. Each plaintiff was employed by defendant as a track foreman. Federal law requires railroads to test all track foremen periodically, to ensure their understanding of a book of rules about safety and procedure. Prior to implementation of the MW Examination at issue, ConRail complied with the federal law by giving track foremen a one hundred-question test on the rules. All of the plaintiffs had no difficulty comprehending and passing the one hundred-question test. However, the one hundred-question test was administered in an informal atmosphere and was used primarily as a teaching tool.

The book of rules was revised in September, 1982. ConRail replaced its one hundred-question test with a two-part MW Examination on the revised rules. Employees were required to attain a score of eighty-five percent to maintain track foreman status and the test was given in a classroom atmosphere. All of the employees attained a passing score on part one of the examination, which consisted of fifty questions. Plaintiffs challenge only part two of the examination, which consisted of thirty-one questions. Any employee, black or white, who attained less than eighty-five percent on either part of the MW Examination was disqualified from working as a track foreman until he could attain a passing score. Although each plaintiff eventually passed the MW Examination, each plaintiff was temporarily disqualified from working as a track foreman because of a failing test score. The MW Examination was given in November and December 1982 and during all of 1983.

Plaintiffs claim on appeal that they established

claims under two theories below—disparate impact and disparate treatment. Both theories of recovery have been recognized under Title VII of the federal Civil Rights Act, 42 USC 2000e-2, and under § 202 of the state Civil Rights Act. *Farmington Ed Ass'n v Farmington School Dist,* 133 Mich App 566; 351 NW2d 242 (1984).

Under the disparate impact theory, proof of a discriminatory motive is not required. Disparate impact involves employment practices that are facially neutral in their treatment of different groups but that, in fact, fall more harshly on one group than on another and cannot be justified by business necessity. *Farmington Ed Ass'n, supra,* p 571. This Court has noted that "a completely neutral practice will always have a disparate impact on some group, and discrimination need not always be inferred from such consequences." *Id.,* p 575.

In order to establish a prima facie case of disparate impact, the plaintiffs must show "that the tests in question select applicants for hire or promotion in a racial pattern significantly different from that of the pool of applicants." If plaintiffs make this showing, the employer must then meet the burden of showing that the tests have a "manifest relationship to the employment in question." *Albemarle Paper Co v Moody,* 422 US 405, 425; 95 S Ct 2362; 45 L Ed 2d 280 (1975).

For purposes of this appeal, neither party disputes the trial court's decision to use the guidelines on employee selection adopted by the Equal Employment Opportunity Commission. Under the EEOC guidelines, a selection rate that is "less than [eighty percent] of the rate for the group with the highest rate will generally be regarded . . . as evidence of adverse impact." 29 CFR 1607.4(D) (1981). Using these guidelines, the trial court

found that the pass ratio was greater than eighty percent and therefore not evidence of disparate impact.

Plaintiffs first argue that the trial court should have analyzed disparate impact by considering the number of test attempts rather than the number of individuals tested. The trial court in the present case ruled that disparate impact had to be based on the number of individuals tested: "You take the number of testees, not attempts, because you could have one person who took the test one hundred times, and it would distort reality." We agree. Under the "attempt" analysis, a single individual could make virtually any test appear discriminatory. Plaintiffs had the burden of showing that the tests in question had a disparate impact on the number of black applicants who were allowed to continue working as foremen. The statistics must reflect the number of individuals who took the challenged test rather than the number of attempts that were made by those individuals. *Connecticut v Teal,* 457 US 440; 102 S Ct 2525; 73 L Ed 2d 130 (1982), cited by plaintiffs, does not support their argument.

Plaintiffs also argue that the trial court erred by excluding one black testee's score from its analysis. According to the record, one black individual took the test once in 1983, failed, and never took the test again. All of the other testees, black and white, either passed on their first attempt or took the test two or more times. The trial court ruled that the individual who only took the test once and failed was "in a different circumstance and shouldn't be counted."

When the one-time testee's score is omitted from the statistical pool, the 1983 test had an inverse impact ratio of "a little over 80%." When the one-time testee's score is included, the ratio drops to

78.6 percent. (Defendants have recently reviewed and amended their records and new data suggests that the impact ratio for the 1983 test is over eighty percent under either analysis.)

Again, plaintiffs cite no authority for their argument that the trial court erred. Although plaintiffs argue that "defendant offered no legal or expert authority for excluding this individual," it appears that plaintiffs had the burden of justifying their statistical evidence. The only statistical analysis plaintiffs offered was provided by an expert in black English. The statistical data in the present case was taken from defendants' affidavit by Thomas O'Connell, Equal Employment Manager for ConRail. Under these circumstances, the trial court was correct in its judgment that plaintiffs did not establish a prima facie case of disparate impact.

We next turn to plaintiffs' claim of disparate treatment. To establish a claim of disparate treatment, plaintiffs must establish by a preponderance of the evidence that a prima facie case of discrimination exists. *Clark v Uniroyal Corp,* 119 Mich App 820, 824; 327 NW2d 372 (1982). Plaintiffs must show that they were members of a class entitled to protection under the act and that, for the same or similar conduct, they were treated differently than one who was a member of a different race. *Schipani v Ford Motor Co,* 102 Mich App 606, 617; 302 NW2d 307 (1981).

If the plaintiffs succeed in presenting a prima facie case, the burden shifts to the defendants to articulate some legitimate, nondiscriminatory reason for its actions. If defendants articulate such a reason, the plaintiffs must prove by a preponderance of the evidence that defendants' reasons were a mere pretext for discrimination. *Clark, supra,* p 824. If plaintiffs are unable to sustain the shifting

burden of proof, summary disposition in favor of defendants is appropriate. *Id.,* p 827.

In the present case, plaintiffs allege that two of the tests taken by black workers were improperly scored and that one of the defendant's employees changed test answers to favor one white worker.

Plaintiffs claim that the tests taken by plaintiffs Payne and McDaniels on December 9, 1982, were improperly scored. As defendants explained to the trial court, nine of the employees who were tested on that date failed to answer questions numbered 26 through 31. The nine employees included both black and white workers. Defendants told the trial court that, although they did not know what had happened, the nine exams may have been given out without the last page of questions. Rather than count the unanswered questions as incorrect answers, defendant scored all nine of the incomplete exams on a twenty-five-question basis. Under this grading procedure, plaintiffs Payne and McDaniels received scores of eighty-four percent. Both plaintiffs were credited with twenty-one correct answers out of twenty-five questions rather than receiving a score for twenty-one out of thirty-one.

Plaintiffs argue that the correct score for Payne and McDaniels would have been eighty-seven percent, implying that the six blank answers should have been treated as correct answers. Plaintiffs' position is clearly without merit.

Plaintiffs also allege that plaintiff Payne saw defendant Ratke fill in answers for a white employee. Plaintiffs offered no further evidence, beyond bald assertions of discrimination. Conclusory allegations are insufficient to rebut evidence of nondiscriminatory conduct. *Clark, supra,* p 826. Moreover, the trial court correctly ruled that one

improperly marked test would not be enough to support a claim of intentional discrimination.

Plaintiffs also argue that the trial court should not have dismissed the action against the individual defendants Ratke and Sessa. This issue is without merit. Plaintiffs' claims against these defendants are based upon their unsubstantiated claims of disparate impact and disparate treatment discussed above.

Affirmed.

D. E. HOLBROOK, JR., J., concurred.

SHEPHERD, J. *(dissenting).* I agree with the majority opinion with the exception of the analysis of the claim of plaintiffs that Mr. Payne saw Mr. Ratke fill in answers for a white employee. In my view this raises an issue of discrimination that should go to the trier of fact. On the assumption that Payne is an agent of the employer we would be faced with a situation where the employer allegedly gave assistance to a white employee and failed to do so for black employees. Whether this was an isolated event, an action not approved by the employer or whether the assistance was rendered for reasons other than race are all factual questions that require further development. Blacks deserve to be treated the same way as whites with respect to the contents of the examination as well as the administration of the test. If the employer assisted white employees and did not assist blacks, an argument could be made that the entire test was void and that had the blacks received equal treatment, i.e., had they been assisted also, they would have passed. Plaintiffs would then be able to claim damages. Accordingly, I would reverse and remand for trial but only on the issue of whether Ratke filled in answers for a white employee and whether this constituted racial discrimination in the context of all of the other facts.