25 F.3d 1050
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Rebecca A. SCHIRRICK, Plaintiff-Appellant,
v.
BUTLER AVIATION, a Texas corporation, Defendant-Appellee.
 No. 93-1289.
 United States Court of Appeals, Sixth Circuit.
 June 2, 1994.
 
 Before: KENNEDY and BATCHELDER, Circuit Judges; and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff Rebecca A. Schirrick appeals the grant of summary judgment for defendant Butler Aviation in this diversity action, which charged defendant with discriminating against plaintiff because of her pregnancy in violation of Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), Mich.Comp.L.Ann. Sec. 37.2101, et seq.[1] An issue concerning the timeliness of plaintiff's notice of appeal is also presented for our review. For the reasons stated below, we conclude that the notice of appeal was timely and that the judgment of the District Court should be affirmed.
 
 I.
 
 2
 Plaintiff worked for defendant at Detroit City Airport as a line-service employee. In this position, plaintiff fueled and otherwise serviced planes. In June of 1990, plaintiff learned that she was pregnant. She presented defendant with a note from her doctor indicating that he had advised plaintiff to avoid all contact with noxious chemicals and fuels.
 
 
 3
 Defendant's "Disability Leave of Absence" policy provides in pertinent part that:
 
 A. Procedure
 
 4
 1. An employee who is or will be unable to work because of a disability must request a disability leave of absence in writing.
 
 
 5
 ....
 
 
 6
 4. It should be noted that all forms of disability are treated alike under company policies. However, in certain types of disability such as pregnancy or some conditions requiring surgery, the employee is considered as able to continue working until the physician says otherwise. The employee will be required to stop work when the doctor certifies in writing that the employee is unable to perform the job due to the disabling condition. In such cases, the employee is expected to give the supervisor the earliest possible notice of the forthcoming disability.
 
 
 7
 Joint App. at 190 (emphasis added). Two days after receiving the note from plaintiff's physician, defendant placed plaintiff on disability leave.
 
 
 8
 This action disappointed plaintiff because she had hoped that during her pregnancy she could obtain a position as a dispatcher, a position that does not require constant fueling, although it requires some. A dispatcher earns approximately 35 cents more an hour than a full-time line-service employee. Before she was placed on leave, plaintiff had informed her Union representative about her idea to work as a dispatcher during her pregnancy. The representative told her to keep him informed. Plaintiff asked two dispatchers if they were interested in switching positions with her: Paul Ariano told her that he would think about it; and Rick Winans allegedly told plaintiff's husband that he was willing to switch. No agreement, however, was ever reached between plaintiff and Ariano or Winans. She never approached a third dispatcher, Janet Giganic, about her idea.
 
 
 9
 Plaintiff sought the Union's help in obtaining the transfer after she was placed on leave. The Union representative could not help her because Giganic, Ariano and Winans all have more seniority than plaintiff. At this time, plaintiff alleges that she believed that defendant had violated its disability leave policy by placing her on disability leave so quickly, but she did not request that a grievance be filed on her behalf. Neither did plaintiff ever ask defendant directly if she could be transferred to the dispatch position. In her deposition, plaintiff stated that the reason she did not pursue it any further was because she was already out of work and believed the company wouldn't agree to it. Joint App. at 39.
 
 
 10
 In September of 1990, plaintiff submitted another note from her physician:
 
 
 11
 I have advised [plaintiff] to avoid all contact with noxious chemicals and fuels. Exposure to aviation fuels may cause harmful side effects to mother or developing fetus.
 
 
 12
 Joint App. at 192. She also requested disability benefits claiming total disability because "exposure to aviation fuels may cause harmful side effects to mother or developing fetus." Joint App. at 191. Plaintiff received disability benefits for ten months.
 
 
 13
 Plaintiff gave birth to twins in January of 1991. Due to complications related to the delivery, plaintiff did not return to work until April 28, 1991.
 
 
 14
 Approximately one year later, plaintiff filed a complaint against defendant in Wayne County Circuit Court alleging violations of Michigan's ELCRA and the state's Handicappers' Civil Rights Act ("HCRA") for the failure to move plaintiff from the line-service position to the dispatch position during her pregnancy. Defendant removed the case to United States District Court for the Eastern District of Michigan on the basis of diversity jurisdiction.
 
 
 15
 After a hearing, in a ruling from the bench, the District Court granted defendant's motion for summary judgment. The court found that plaintiff's claims were inextricably intertwined with the collective bargaining agreement ("CBA"), therefore, they were preempted by the Railway Labor Act, 45 U.S.C. Sec. 151 et seq., and plaintiff was confined to the remedies provided in the CBA. The court went on to find that even assuming plaintiff's claims were not preempted, defendant was still entitled to summary judgment. As to the claim under the HCRA, the court held that pregnancy is not a handicap within the meaning of the HCRA. As to the claim alleging sex discrimination, the court held that plaintiff had failed to establish a prima facie case of disparate treatment.
 
 
 16
 On January 29, 1993, the court entered its order granting defendant's motion for summary judgment and dismissing plaintiff's complaint. The District Court had ruled from the bench stating its reasons. On February 2, 1993, plaintiff filed a motion objecting to the order on the ground that it did not specify reasons for the dismissal and requesting an amended order that reflected such reasons. On February 5, 1993, plaintiff appealed the court's order entered on January 29, 1993. On February 8, 1993, the court denied plaintiff's motion. Plaintiff did not file a second notice of appeal.
 
 
 17
 On May 3, 1993, defendant filed a motion in this Court to dismiss plaintiff's appeal for lack of subject matter jurisdiction. Defendant alleged that plaintiff had failed to appeal in a timely manner. Under the version of Fed.R.App.P. 4(a)(4) then in effect, a motion to amend the judgment is a time-tolling motion; any notice of appeal filed while such a motion is pending is ineffective and another notice must be filed after the disposition of the motion. Plaintiff argued that although the District Court had characterized it as a motion to amend the judgment under Fed.R.Civ.P. 59(e), her motion was one for clarification and that her time to appeal was not tolled under Rule 4(a)(4). On June 14, 1993, a motions panel of this Court referred this matter to the panel assigned to hear the merits of the appeal.
 
 II.
 
 18
 We agree with plaintiff's characterization of her February 2nd motion as one for clarification under Rule 60(a).[2] Cf. Hasbrouck v. Texaco, Inc., 879 F.2d 632, 635 (9th Cir.1989) (court's failure to memorialize part of decision is clerical error; motion to clarify such error treated as a Rule 60(a) motion). The motion was thus not a time-tolling motion under the version of Rule 4(a)(4) in effect at the time the motion was filed.[3] Plaintiff's notice of appeal was therefore timely and vested this Court with jurisdiction over this appeal. Having satisfied ourselves of this Court's jurisdiction, we proceed to the merits of the appeal.
 
 III.
 
 19
 We review a lower court's decision to grant summary judgment on a de novo basis, making all reasonable inferences in favor of the non-moving party. EEOC v. Univ. of Detroit, 904 F.2d 331, 334 (6th Cir.1990). Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to summary judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). There is no genuine issue of material fact where the "non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Id. at 323.
 
 
 20
 We first turn to the question of whether plaintiff's claim that defendant had violated Michigan's ELCRA was preempted by the Railway Labor Act ("RLA"), 45 U.S.C. Secs. 151-188.
 
 The RLA applies to:
 
 21
 every common carrier by air engaged in interstate or foreign commerce ... and every air pilot or other person who performs any work as an employee or subordinate official of such carrier or carriers, subject to its or their continuing authority to supervise and direct the manner or rendition of his service.
 
 
 22
 Id. Sec. 181. The RLA's coverage was extended to air carriers in 1936 by enactment of Title II of the RLA, 45 U.S.C. Secs. 181-184. Thus, plaintiff, who is an employee of an air carrier, is subject to the RLA's statutory federal jurisdiction. Section 184 requires air carriers and their employees, acting through their representatives, to establish system, group, or regional boards of adjustment for the resolution of disputes over the interpretation and application of the parties' collective bargaining agreements. International Ass'n of Machinists, AFL-CIO v. Central Airlines, Inc., 372 U.S. 682, 686 (1963). Through system boards of adjustment, the Act has exclusive jurisdiction over disputes that, in any manner, involve the interpretation or application of a collective bargaining agreement. Andrews v. Louisville & Nashville R.R. Co., 406 U.S. 320, 324-26 (1972).
 
 
 23
 In the present case, the CBA, written under the auspices of the RLA, contained a broad arbitration and grievance procedure, applying to "any controversy, complaint, misunderstanding, or dispute concerning the meaning, interpretation, or application of the provisions of this Agreement." Under the terms of the CBA, if a grievance cannot be resolved, it is submitted to a Board of Arbitrators whose decision is final and binding. Plaintiff did not submit her claim to a Board of Arbitrators, but filed suit under state law.
 
 
 24
 Plaintiff alleges that her claim is not preempted by federal law because it does not require an interpretation of the CBA. We disagree. The issue in this case involves whether plaintiff was properly put on a medical leave of absence pursuant to the CBA or had a right to be switched to another position, to a dispatch position. Her complaint alleges that the company did not grant her request for a "shift switch to a position she was qualified to perform, pursuant to her employee contract." The resolution of this dispute then comes under the terms of the CBA, because in order to switch positions, seniority of other persons must be taken into consideration. Plaintiff was requesting to be switched to a dispatch position, which has a seniority requirement, which is governed by the CBA. This claim places the terms of the CBA in issue. Plaintiff also claims that defendant violated the contract by placing her on a leave of absence. This claim also requires additional examination of the CBA provisions relating to job classifications and to medical and pregnancy leave. Unlike Smolarek v. Chrysler Corp., 879 F.2d 1326 (6th Cir.) (en banc), cert. denied, 493 U.S. 992 (1989), plaintiff's claim requires extensive interpretation of the language of the CBA. It is, therefore, preempted by federal law, McCall v. Chesapeake & Ohio Ry., 844 F.2d 294 (6th Cir.), cert. denied, 488 U.S. 879 (1988); Brown v. American Airlines, Inc., 593 F.2d 652, 655 (5th Cir.1979), which indicates that the claim must be submitted to arbitration according to the RLA, 45 U.S.C. Sec. 184.
 
 
 25
 Even if plaintiff's discrimination claim were not preempted, defendant would be entitled to summary judgment because plaintiff has not made a sufficient showing that she was treated differently than similarly situated men. Plaintiff stated that she knew of no situation in which defendant had allowed a disabled employee, who had notified defendant of the disability, to continue to work or to work in another position. Defendant established that from January 1984 through September 1992, every employee, including plaintiff, whose physician indicated that they were no longer capable of working was placed on a disability leave of absence. None were permitted to return until so authorized by a physician.
 
 
 26
 In response to defendant's motion for summary judgment, plaintiff produced an affidavit of Charlene Landrum, a Butler employee. Landrum stated that Paul Garavaglia, while employed at Butler as a fueler, injured himself and was in a cast. She further stated that during his injury, defendant moved him from his fueling position to a dispatch position. Joint App. at 220-21. According to Garavaglia's medical records, however, Garavaglia was placed on medical leave for injuries sustained at work on September 10, 1981 and was not authorized by his physician to return to work until November 3, 1981. In a subsequent affidavit, Landrum admitted that her recollection of this incident, which occurred approximately twelve years earlier, was hazy. She retracted what she had said in her earlier affidavit about defendant moving Garavaglia to an inside position. Joint App. at 220.
 
 
 27
 When making a claim of disparate treatment under the ELCRA, a plaintiff must first establish a prima facie case of discrimination. Pitts v. Michael Miller Car Rental, 942 F.2d 1067, 1070 (6th Cir.1991) (citing Jenkins v. Southeastern Mich. Chapter, American Red Cross, 141 Mich.App. 785, 793-95, 369 N.W.2d 223, 228 (1985)). To carry this initial burden, a plaintiff must show that she is a member of a class protected under the ELCRA and that, for the same or similar conduct, she was treated differently than members of a non-protected class. Id. If a prima facie case is shown, the burden then shifts to the defendant to articulate some non-discriminatory reason for its actions. If the defendant carries this burden, it is left to the plaintiff to prove the pretextual nature of the defendant's proffered reasons by a preponderance of the evidence. Smith v. Consolidated Rail Corp., 168 Mich.App. 773, 778, 425 N.W.2d 220, 223 (1988).
 
 
 28
 In the instant case, plaintiff has failed to present a prima facie case of discrimination. The only evidence of disparate treatment she submitted was the first Landrum affidavit. Defendant then submitted the second Landrum affidavit, which contradicted and rebutted the first. Defendant also submitted the medical records that rebutted the assertion that it had transferred Garavaglia to a dispatch position while he was injured. Moreover, defendant submitted records indicating that all employees with disabling conditions were put on disability leave. Plaintiff had no other evidence of disparate treatment to offer. In Smith, supra, the court held that unsubstantiated testimony alleging disparate treatment was insufficient to rebut evidence of nondiscriminatory conduct and was insufficient to establish a prima facie case of disparate treatment. Smith, 168 Mich.App. at 779, 425 N.W.2d at 224. We hold that plaintiff has not produced enough evidence of disparate treatment to create a triable issue of fact.
 
 IV.
 
 29
 Accordingly, the judgment of the District Court is AFFIRMED.
 
 
 
 [1]
 Plaintiff also alleged that defendant had failed to accommodate her pregnancy in violation of Michigan's Handicappers' Civil Rights Act, Sec. 37.1101, et seq. The District Court found that pregnancy is not considered a handicap and dismissed the claim. Plaintiff does not appeal the dismissal of this claim
 
 
 [2]
 Rule 60(a) provides in pertinent part:
 Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party....
 
 
 [3]
 On December 1, 1993, the latest amendments to the Federal Rules of Appellate Procedure became effective. Rule 4(a)(4) underwent significant change. Under the new rule, Rule 60 motions filed within 10 days after the entry of judgment are treated as time-tolling motions. Fed.R.App.P. 4(a)(4)(F). The new rule, however, also does away with the requirement of filing a second notice of appeal when the first was filed before or while an enumerated post-trial motion is pending. Once the post-trial motion is disposed of, the previously filed notice of appeal vests jurisdiction in the court of appeals. See Fed.R.App.P. 4(a)(4), Notes of the Advisory Committee on Appellate Rules (1993). As the notice of appeal was timely under the pre-amendment rule, we leave for another day the question of whether the amended rules can resurrect, retroactively, a notice of appeal which was a nullity at the time it was filed