Cavanagh, J.
(dissenting).
Today the majority rejects plaintiff’s sex-based hostile-work-environment claim because it is not sexual in nature. According to the majority, “conduct or communication that is gender-based, but is not sexual in nature, does not constitute sexual harassment as that term is clearly defined in [MCL 37.2103(i) of] the [Civil Rights Act].” Ante at 304. By dismissing plaintiff’s claim, the majority severely constricts the scope of Michigan’s Civil Rights Act, necessarily precluding the recognition of actions for hostile work environments based on religion, race, color, national origin, age, sex (inasmuch as the harassment is not overtly “sexual”), height, weight, or marital status under § 2202 of Michigan’s Civil Rights Act.
Because the majority oversimplifies the Civil Rights Act’s hostile-work-environment proscription and mistakenly concludes that gender-based harassment “is not at all sexual in nature,” I must respectfully dissent. Ante at 303.
*323 FACTS AND PROCEEDINGS
Plaintiff alleged that decedent Rich, employed for more than twenty-five years as a capitol security officer with the Michigan State Police, suffered weight- and gender-based harassment, as well as harassment of a “sexual” nature.[1]
The trial court summarily disposed of plaintiff’s sexual-harassment claim on defendant’s motion, concluding that the alleged conduct was gender-based and, thus, not of a “sexual” nature, as required by § 2103(i)(iü).
Plaintiff’s counsel submitted a motion for reconsideration, which was supported by an affidavit from decedent’s sister.[2] The affidavit alleged that decedent had repeatedly and continually received sexually explicit cartoons and other material of a sexual nature in her mailbox, to which her supervisors failed to adequately respond.[3] Counsel also attached a grievance filed by decedent against a coworker, claiming the colleague pushed and hit her, and used “sexual harassment talk” to make her look like “one of the guys” in front of the new recruits.[4] In addition, the grievance alleged that the same individual directed additional unwelcome sexual comments at decedent.[5] The trial judge denied plaintiff’s motion for reconsideration and refused to allow plaintiff’s counsel to amend the complaint.
*324 Plaintiff filed an interlocutory appeal, which the Court of Appeals denied. After the parties stipulated the dismissal of plaintiffs weight-based harassment claim, plaintiff filed an appeal as of right with the Court of Appeals, which reversed, holding that plaintiff alleged facts sufficient to support a sexual-harassment claim.
THE ELLIOTT-LARSEN CIVIL RIGHTS ACT
When the Michigan Legislature drafted our Civil Rights Act, MCL 37.2101 et seg., it relied heavily on the original federal title VII statutes banning workplace discrimination. Reviewing the text of each confirms this design. MCL 37.2202(1) of Michigan’s Civil Rights Act provides:
An employer shall not do any of the following:
(a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.
(b) Limit, segregate, or classify an employee or applicant for employment in a way that deprives or tends to deprive the employee or applicant of an employment opportunity, or otherwise adversely affects the status of an employee or applicant because of religion, race, color, national origin, age, sex, height, weight, or marital status.
Similarly, the federal statute provides:
(a) It shall be an unlawful employment practice for an employer—
(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual’s race, color, religion, sex, or national origin; or
*325 (2) to limit, segregate, or classify Ms employees or applicants for employment in any way wMch would deprive or tend to deprive any individual of employment opportumties or otherwise adversely affect Ms status as an employee, because of such individual’s race, color, religion, sex, or national origm. [42 USC 2000e-2.]
But for the addition of age, height, weight, and marital status as prohibited grounds of discrimination, as well as a few minor drafting variations, MCL 37.2202(1) and 42 USC 2000e-2 would be identical.
As with any statute subject to judicial review, our courts have developed rules that articulate the necessary elements of statutory claims. Because Michigan’s employment-discrimination statute so closely mirrors federal law, we often rely on federal precedent for guidance. See Radtke v Everett, 442 Mich 368, 381-382; 501 NW2d 155 (1993), quoting Sumner v Goodyear Tire & Rubber Co, 427 Mich 505, 525; 398 NW2d 368 (1986) (“While this Court is not compelled to follow federal precedent or guidelines in interpreting Michigan law, this Court may, ‘as we have done in the past in discrimination cases, turn to federal precedent for guidance in reaching our decision.’ ”). As a result, employment-discrimination actions under state law are nearly identical to federal actions. For example, our courts have recognized both disparate-treatment and disparate-impact actions identical to those articulated by the United States Supreme Court.[6]
*326 Regrettably, the majority now departs from this sound tradition and, in doing so, makes sweeping changes to our employment-discrimination jurisprudence. Hostile-work-environment actions, available on the basis of any ground articulated in the federal statute, will now be limited to claims of a sexual nature under our state Civil Rights Act.
By dismissing plaintiffs allegedly nonsexual hostile-work-environment action, the majority necessarily confines hostile-work-environment claims to those authorized by MCL 37.2103(i)(iii) and rejects federal precedent that recognizes hostile-work-environment actions on the basis of statutory text nearly identical to our own, i.e., § 2202. Although the majority has not acknowledged the effect of its holding, it is important to emphasize that the Court would not dismiss plaintiff’s sex-based claim if it recognized that hostile-work-environment actions could be brought under § 2202.
Today’s ruling is particularly significant because a hostile-work-environment claim is the only statutory remedy cognizable when an employee suffers pervasive and severe forms of discrimination, but experiences no tangible employment action. No longer will an employee subject to a sex-based (but not overtly sexual) hostile work environment find redress, even though an employer may fail to adequately respond.
HOSTILE-WORK-ENVIRONMENT ACTIONS
Although this Court has never before expressly analyzed the origin of nonsexual hostile-work-environment claims under our Civil Rights Act, our courts have recognized that such claims may be asserted on the basis of any ground enumerated in Michigan’s Civil Rights Act in MCL 37.2202. Malan v Gen *327 Dynamics Land Sys, Inc, 212 Mich App 585, 587; 538 NW2d 76 (1995) (holding that a hostile-work-environment claim is actionable on the basis of any one of the enumerated classifications in MCL 37.2202), citing Rasheed v Chrysler Corp, 445 Mich 109; 517 NW2d 19 (1994) (religion-based harassment from coworkers and supervisors); Sumner, supra at 538 (race-based harassment from supervisors as a continuing violation); Meek v Michigan Bell Co, 193 Mich App 340, 342-343; 483 NW2d 407 (1992) (sex-based and religion-based harassment from supervisors); see also Jackson v Quanex Corp, 191 F3d 647 (CA 6, 1999) (recognizing race-based, hostile-environment action under the Civil Rights Act); Downey v Charlevoix Co Bd of Rd Comm’rs, 227 Mich App 621; 576 NW2d 712 (1998) (recognizing disability-based, hostile-work-environment action). These rulings both identify and effectuate our Legislature’s intent to prohibit prejudicial discrimination in the employment realm.
Lamentably, the majority now eviscerates Michigan’s hostile-work-environment jurisprudence with a perfunctory textual analysis that misconstrues our Legislature’s intent. To clarify the errors present in the majority’s reasoning, I will examine the text of the statute in light of its history and context.
MCL 37.2202
The broad language of Michigan’s Civil Rights Act expressly prohibits acts that “discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment . . . .” MCL 37.2202(l)(a). Neither may an employer “[l]imit, segregate, or classify an employee ... in a way that deprives or tends to deprive the employee ... of an employment opportunity, or otherwise *328 adversely affects the status of an employee . . . MCL 37.2202(l)(b). This mandate prohibits employment conditions that are likely to deprive an employee of an opportunity or negatively affect her employment status. In other words, an employer may not turn a blind eye to conduct that creates a hostile work atmosphere on the grounds enumerated above.
The United States Supreme Court has interpreted the analogous federal statute — containing language nearly identical to MCL 37.2202 of our Civil Rights Act — and has concluded that its text supports hostile-work-environment claims on the basis of any ground enumerated in 42 USC 2000e-2. According to that Court, the prohibition on discrimination “is not limited to ‘economic’ or ‘tangible’ discrimination.” Meritor Savings Bank, FSB v Vinson, 477 US 57, 64; 106 S Ct 2399; 91 L Ed 2d 49 (1986). “The phrase ‘terms, conditions, or privileges of employment’ evinces a congressional intent ‘to strike at the entire spectrum of disparate treatment of men and women,’ ” and extends to all forms of discrimination prohibited by the federal statute. Meritor, supra at 64, and at 66, citing Firefighters Institute for Racial Equality v St Louis, 549 F2d 506 (CA 8, 1977) (race); Compston v Borden, Inc, 424 F Supp 157 (SD Ohio, 1976) (religion); and Cariddi v Kansas City Chiefs Football Club, 568 F2d 87, 88 (CA 8, 1977) (national origin).
The phrase terms, conditions or privileges of employment in [title VII] is an expansive concept which sweeps within its protective ambit the practice of creating a working environment heavily charged with ethnic or racial discrimination .... One can readily envision working environments so heavily polluted with discrimination as to destroy completely the emotional and psychological stability of minority group workers .... [Meritor, supra at 66, citing Rogers v *329 Equal Employment Opportunity Comm, 454 F2d 234, 238 (CA 5, 1971).]
With this recognition, the Supreme Court clarified that the plain text of the federal statute prohibits severe and pervasive employment discrimination— what we often refer to as a hostile work environment — without regard to whether a plaintiff suffers a tangible employment action. Instead of acknowledging our identical legislative directive in § 2202, which imposes no economic-loss requirement, the majority ignores its relevance and focuses exclusively on subsection 2103(i), which simply clarifies that sex discrimination includes sexual harassment. While I agree that subsection 2103(i) clarifies which forms of sexual harassment are prohibited, it does not narrow MCL 37.2202, which outlaws employer-sanctioned work environments hostile to employees on the basis of, inter alia, sex.
MCL 37.2103(1)
The majority rejects my interpretation because MCL 37.2103(i) expressly authorizes sexual-harassment, hostile-work-environment claims, while the federal statute contains no similar statutory counterpart. Apparently, the majority assumes the legislative directive with regard to sexual harassment in subsection 2103(i) precludes hostile-environment claims on other bases, i.e., if our Legislature had wanted to prohibit work environments inhospitable to employees on the basis of, inter alia, race, religion, or sex, it would have stated as much. However, this often disfavored canon of negative implication is less than persuasive, particularly when the origin of MCL 37.2103(1) is understood in context.
*330 As the text indicates, our Legislature enacted 1980 PA 202, later codified as MCL 37.2103(f), to clarify that sexual harassment was, indeed, prohibited by Michigan’s Civil Rights Act. In drafting the text, the Legislature relied heavily on language used by the federal agency charged with enforcing the federal employment rights act, the Equal Employment Opportunity Commission.
As originally enacted, 29 CFR 1604.11 provided:
(a) Harassment on the basis of sex is a violation of Sec. 703 of Title VII.[7] Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when
(1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual’s employment,
(2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or
(3) such conduct has the purpose or effect of unreasonably interfering with an individual’s work performance or creating an intimidating, hostile, or offensive working environment.
Our statute is nearly identical. MCL 37.2103(f) provides:
Discrimination because of sex includes sexual harassment. Sexual harassment means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature under the following conditions:
(i) Submission to the conduct or communication is made a term or condition either explicitly or implicitly to obtain *331 employment, public accommodations or public services, education, or housing.
(ii) Submission to or rejection of the conduct or communication by an individual is used as a factor in decisions affecting the individual’s employment, public accommodations or public services, education, or housing.
(iii) The conduct or communication has the purpose or effect of substantially interfering with an individual’s employment, public accommodations or public services, education, or housing, or creating an intimidating, hostile, or offensive employment, public accommodations, public services, educational, or housing environment.
By codifying the federal guidelines, our Legislature merely clarified that the sexual-harassment protections in the federal statutes were analogous in scope to those in Michigan’s Civil Rights Act. Both those lobbying for and against the bill agreed that harassment cases in general — and sexual-harassment cases in particular — could be brought under the current statute. House Analysis, HB 4407 (August 15, 1980). In fact, opponents of the bill argued the amendment might cause confusion within the judicial branch:
The civil rights act’s coverage of sexual harassment should not be changed as proposed by the bill. The act currently covers sexual harassment in the same manner as it is covered by the federal government in Title VII cases. That is, sexual harassment is covered under the general language prohibiting sexual discrimination. There has been a series of administrative and judicial cases clearly enunciating the appropriateness of this coverage, and it is feared that future anti-sexual harassment court decisions based on federal provisions and precedents would not be applicable or have a significant impact on Michigan if this state was prohibiting sexual harassment under different statutory language than used on the federal level. [Id. at 3.]
*332 While acknowledging this concern, those in favor of the provision felt that the amendment was “necessary to ‘motivate’ the [Michigan Department of Civil Rights] to treat sexual harassment as a bona fide civil rights violation . ...” Id. at 2. Before this enactment, the Department of Civil Rights often refused to pursue sexual-harassment claims unless the victim was also a member of a minority group. Id. Forebodingly, members of the Legislature worried that, with the addition of MCL 37.2103(i), the Michigan judiciary might reject the utility of federal precedent in nonsexual hostile-work-environment actions even though clearly authorized by MCL 37.2202(1). Unfortunately, this fear has come to pass.
The majority would reject my construction, claiming it gives limited meaning to 1980 PA 202. After all, if the Civil Rights Act already prohibited discriminatory and hostile work environments, 1980 PA 202 added little. Adding little, however, does not mean adding nothing. As noted in the House Bill Analysis, the enactment did clarify that sexual harassment was prohibited. This affirmation was necessary in light of the number of federal district court decisions that refused to acknowledge that quid pro quo sexual harassment constituted discrimination based on sex. See Miller v Bank of America, 418 F Supp 233, 234 (ND Cal, 1976) (“essentially the isolated and unauthorized sex misconduct of one employee to another” not recognizable under title VII), rev’d Miller v Bank of America, 600 F2d 211 (CA 9, 1979) (finding as a matter of law that conduct of a sexual nature constituted discrimination based on sex). Because the Michigan Department of Civil Rights, which was responsible for enforcing the act, all but refused to pursue such *333 claims, our Legislature could not leave it to the agency to address the issue as Congress could. Viewed in context, one has little doubt that 1980 PA 202 served a significant purpose, even if it merely reiterated the scope of protections afforded by the Civil Rights Act.
Moreover, any alleged redundancy under my interpretation of MCL 37.2103(i)(iii) is also present in the majority’s interpretation of subsections 2103(i)(i) and 2103(i)(ii) (often referred to as quid pro quo harassment). Unless the majority would construe the discrimination ban in employment (MCL 37.2202), public accommodations (MCL 37.2302), and education (MCL 37.2402) in a manner that would otherwise permit unwelcome conduct of a sexual nature, then it must agree that subsection 2103(i) merely clarified what the Civil Rights Act had already proscribed. To now construe MCL 37.2103(1) in a fashion that limits the scope of protections present throughout the act ignores both its specific text and overall structure.
Although, on occasion, I have agreed with earlier holdings that note that Michigan’s sexual-harassment doctrine has a specific statutory basis in contrast to its federal statutory counterpart,[8] I find no legitimate reason to conclude that hostile-work-environment claims should be limited to incidents of harassment that are sexual in nature. The plain text of the Michigan Civil Rights Act requires this interpretation.
The majority’s failure to acknowledge the effect of its decision is quite unfortunate. If plaintiff’s gender-based hostile-work-environment claim must be dis *334 missed because it is not of an overtly “sexual” nature, then work environments inimical to a reasonable person on the basis of religion, race, color, national origin, age, sex (inasmuch as it refers to “gender-based” discrimination), height, weight, or marital status are no longer actionable. This interpretation cannot be rationally construed from the text of Michigan’s Civil Rights Act.
STAKE DECISIS
In its hasty attempt to explain Michigan’s civil-rights jurisprudence, the majority continues by overruling Koester v Novi, 458 Mich 1; 580 NW2d 835 (1998), and clarifying that pregnancy, though not at issue here, is not of a sexual nature. However, as I indicated in the Koester majority opinion:
Under [that] reasoning, claims of racial harassment would also fail (despite being recognized by the federal courts), because the act prohibits racial “discrimination” not “racial harassment.” This interpretation defies logic. See Harrison v Metropolitan Gov’t of Nashville & Davidson Co, 80 F3d 1107 (CA 6, 1996), and Snell v Suffolk Co, 782 F2d 1094 (CA 2, 1986) (allowing a claim for racial harassment). [Koester, supra at 11 n 3.]
The majority purportedly justifies this shift by attempting to clearly mark the boundaries of all things “sexual.” In narrowly defining subsection 2103(i), the Court attempts to foreclose actions previously recognized on the basis of, inter alia, race, “gender,” national origin, or religion. No longer may victims of discrimination assert hostile-work-environment claims unless the activity at issue is “sexual” in nature. This sweeping change is a direct result of the *335 majority’s rejection of Koester. Though the majority opinion belies the significance of this shift, Justice Taylor clarified the stakes at oral argument:
Justice Taylor-. Wouldn’t the distinction between these two causes of action be that in the case of discrimination the employee has to endure certain kinds of unpleasant remarks until such time as there is an adverse job action of some kind. In the case of sexual harassment that isn’t true. The person who is the victim of that only need prove that there has been a substantial interference with the employee’s employment or that this is creating an intimidating, hostile or offensive work environment.
[Attorney for Plaintiff: I would agree with that.
Justice Taylor: Isn’t that the great sort of overarching sort of written in neon understanding of this.
[Attorney for Plaintiff: I would agree with that.
Although a majority now claims that overruling Koester would work no “undue hardship because of reliance interests or expectations that have arisen,” ante at 314, I suspect few advocates in plaintiffs’ bar would agree. Robertson v DaimlerChrysler Corp, 465 Mich 732, 757 (2002). Moreover, the contention that overruling Koester would produce no “real-world dislocations,” ante at 316, ignores the effect on this particular plaintiff, and any plaintiff with a pending hostile-environment claim that is not specifically sexual in nature. To claim that “it is hard to envision how any employer or employee conceivably could have altered their conduct in any way in detrimental reliance on Koester” ignores the instability that results from this Court’s weak adherence to the principle of stare decisis. Ante at 315-316 (emphasis in original).[9]
*336 To summarize, the majority overrules precedent and rejects plaintiff’s claim because our Legislature did not specifically articulate the parameters of hostile-work-environment claims for conduct not overtly sexual in nature. In doing so, the Court relies on a rather weak canon of negative implication[10] and ignores the plain text of MCL 37.2202, which does not require an economic injury. The Court also dismisses our Legislature’s intention to mimic the scope of protections afforded by federal antidiscrimination law, as evident in the textual similarities of MCL 37.2202 and 42 USC 2000e-2. Finally, in a most ironic twist, the majority overrules Koester under the guise of its respect for the rule of law, i.e, statutory meaning should be predictable, accessible, and neutrally applied. In light of the text employed by our Legislature, which indicates a desire to extend protections parallel in scope with federal law, our Court’s reliance on federal precedent for guidance, and this Court’s precedent in Koester, I cannot agree that the major *337 ity’s interpretation furthers either our Legislature’s intent or the rule of law.
SEXUAL HARASSMENT INCLUDES GENDER-BASED DISCRIMINATION
Though unnecessary to clarify the availability of “gender-based” hostile-work-environment claims for the reasons stated above, it is worth noting that the plain text of subsection 2103(i) alone permits gender-based claims. When “verbal or physical conduct or communication of a sexual nature” is made a condition of or substantially interferes with, inter alia, employment, the conduct is proscribed. Id. This prohibition was enacted not because all things sexual are inherently discriminatory when targeted at an individual on the basis of her sex, but because sexual conduct that exploits our socially constructed concepts of gender perpetuates unlawful discrimination.
Our courts have recognized that conduct of a “sexual” nature is not prohibited simply because it is “of or pertaining to sex or the attribute of being either male or female” or “existing or predicated with regard to sex.” Oxford English Dictionary (2d ed). Rather, unwelcome sexual conduct is prohibited because it risks exploiting gender-based inequality.[11] As noted in Radtke:
*338 [S]exual harassment is prohibited in the workplace because it violates civil liberty:
“Sexual harassment should be explicitly . . . prohibited because it is a demeaning, degrading, and coercive activity directed at persons on the basis of their sex, the continuation of which is often contingent on the harasser’s economic control over the person being harassed. It should be outlawed because it violates basic human rights of privacy, freedom, sexual integrity and personal security.” [Radtke, supra at 380-381, quoting House Bill Analysis 4407 (August 15, 1980).]
Just five years ago, in Koester, this Court acknowledged that harassing conduct need not be specifically motivated by sexual desire to support an inference of discrimination. It is sufficient that the conduct “is motivated by general hostility to the presence of women in the workplace.” Koester, supra at 15, quoting Oncale, supra at 80.
“ ‘To be sure, the phrase “sexual harassment” can be a misnomer. As several [federal] circuits have now recognized, the touchstone of an actionable . . . sexual harassment claim is not whether the offensive conduct includes “sexual advances or . . . other incidents with clearly sexual overtones.” . . . The critical inquiry “is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.” ’ ” [Koester, supra at 13 (citations omitted), quoting Mentch v Eastern Savings Bank, FSB, 949 F Supp 1236, 1245-1246 (D Md, 1997), quoting Hams v Forklift Systems, Inc, 510 US 17, 25; 114 S Ct 367; 126 L Ed 2d 295 (1993).]
*339 Contrary to the majority’s assertion, only by acknowledging the link between sexual conduct and gender-based inequality can the sexual-harassment provision, MCL 37.2103(i), be rationally applied.
CLARIFICATION OF THE SCOPE OF THIS ACTION
The majority’s ardent response to my dissent suggests I have misunderstood its position and the scope of its holding. Ultimately, the reader will judge the accuracy of that accusation. Nevertheless, I believe a certain degree of clarification is required.
The majority claims that plaintiff only alleged a sexual-harassment claim and, therefore, “there is no need for [it] to reach out and address whether the CRA recognizes a claim for hostile work environment based on anything other than sexual harassment.” Ante at 318-319. However, this position disregards the allegations articulated in plaintiff’s complaint. Plaintiff claimed the conduct of defendant’s employees, “in sexually harassing [d]ecedent Rich, constitutes sexual discrimination in violation of MCL 37.2101 . . . et seq.” (Emphasis added.) Plaintiff stated that the “harassment included, but was not limited to, frequent comments regarding [d]ecedent Rich’s gender, weight and ability as a Capitol Security Officer” and, “on many occasions, [Findsen] made hostile and offensive comments to [d]ecedent Rich regarding her sex, weight and ability as a Capitol Security Officer.” Though the majority cannot dispute “sex discrimination,” as proscribed by MCL 37.2202(1), has been alleged, it apparently presumes that plaintiff seeks recovery only under a narrow subcategory of “sex discrimination,” i.e., sexual harassment as defined by MCL 37.2103(i)(iii)- The majority claims that this *340 assumption justifies its refusal to entertain a hostile-work-environment claim based on sex, which includes gender.
Unfortunately, this interpretation deprives plaintiff of a fair and honest reading of the complaint and altogether ignores plaintiffs position, as repeatedly documented in her briefs to the circuit court, the Court of Appeals, and this Court. Plaintiff noted that both federal and Michigan courts “are increasingly recognizing claims for workplace harassment that go beyond traditional sexual harassment cases.”[12] To support this claim, plaintiffs counsel cited Michigan precedent holding “that harassment based on any one of the enumerated classifications [in MCL 37.2202] is an actionable offense.” See n 11, each citing Malan v General Dynamics Land Systems, Inc, 212 Mich App 585; 538 NW2d 76 (1995). I am unable to identify what more plaintiff’s counsel could have pleaded or argued in the written submissions to clarify plaintiff’s theory for the majority.
Perhaps because the written submissions are adequate to establish plaintiffs claim, the majority attempts to support its narrow interpretation by shifting the focus to counsel’s comments at oral argument. Ante at 318 n 17. Justice Markman queried plaintiff’s counsel, asking him whether he agreed with defense counsel that “all of [plaintiff’s] eggs in this case are in the sexual harassment basket and that sexual discrimination other than sexual harassment hasn’t been *341 pleaded here.” Plaintiffs counsel, Mr. Boog, responded.
Mr. Boog: We haven’t been given an opportunity to plead that because we could not amend our complaint but at the time we did this it was considered a sexual harassment based on gender based on federal decisions that came down at that time.
Justice Taylor continued this line of questioning.
Justice Taylor: Now, that being the case, you are attempting to come under the sexual harassment, is that right
Mr. Boog: Yes, but with the understanding that I don’t believe the statutory language excludes other types of sexual harassment besides what’s in Section 103 and 104, the definitions that we’ve talked about.
* * *
Justice Taylor: You’re not trying to suggest that the activity here fell within the section 103 definition of sex harassment.
Mr. Boog: Yes I do your honor.
When viewed in context, this exchange clarifies that plaintiff alleged a gender- or sex-harassment claim based on MCL 37.2202(1) and MCL 37.2103(i). As noted above, plaintiff’s counsel consistently relied on Malan, which interpreted MCL 37.2202(1) in light of federal precedent. Counsel’s response to Justice Markman concerning federal precedent clarified plaintiff’s MCL 37.2202(1) gender-based harassment theory, in light of the fact that the circuit court granted defendant’s motion for summary disposition concerning the sexual-harassment claim, thereby precluding an amendment to the complaint that would have ciar *342 ified the overtly sexual nature of some of the conduct.
In addition, before the Court of Appeals issued plaintiffs judgment, this Court issued Koester, which held that harassment as proscribed by MCL 37.2103(i)(iii) need not be overtly sexual in nature. Not wanting to minimize the value of Koester (and unaware that a majority of this Court intended to overrule it), plaintiffs counsel clarified that he did, in fact, allege a violation under MCL 37.2103(i) (iii) when asked by Justice Taylor. The clarification, however, does not negate plaintiffs continued reliance on MCL 37.2202(1) or Matan.
Nor can the majority rely on plaintiffs use of “sexual harassment” rather than “gender harassment” to artificially narrow the scope of plaintiffs claim. Plaintiffs counsel did allege harassment of a sexual nature, providing specific proof of unwanted sexual communication in the motion for reconsideration submitted to the circuit court.[13] Hence, the reference to MCL 37.2103(i)(iii) was not made simply as an attempt to equate gender-based conduct with conduct of a sexual nature — although the concepts are, at times, used interchangeably by the bench and bar. Rather, plaintiffs counsel employed the term that best described the behavior to which plaintiff was *343 subjected, while also drawing upon the protections afforded by MCL 37.2202(1) and Malan, supra, in support of a hostile-environment claim not purely sexual in nature.
In response, the majority might claim a narrow reading of plaintiff’s briefs is required because plaintiff did not specifically establish that “severe and pervasive harassment” could constitute “discrimination.” Assuming this is an accurate reflection of the majority’s position, the Court apparently does not find it self-evident that repeated exposure to derisive insults could constitute discrimination — even if unaccompanied by a “tangible employment action.” Hence, with the issuance of this opinion, no longer will a victim of repeated racist, sexist, or otherwise offensive conduct be permitted to bring a claim against a remiss employer unless the victim has also been the target of a tangible employment action or behavior of a sexual nature.
In sum, the majority unfairly neglects plaintiff’s arguments and attempts to ignore the difficult and inescapable issue presented by this case, i.e., whether hostile-work-environment actions may be alleged on the basis of nonsexual conduct.
One wonders what the majority gains by adhering to an artificially constrained reading of plaintiff’s theory of the case. If done in an attempt to respect its role as a mere interpreter of legislative intent, its decision today has the opposite result, ignoring the text-based evidence that our Civil Rights Act was intended to provide — at a minimum — those protections afforded by federal law, in favor of a stilted inteipretation arguably motivated by policy considerations.
*344 APPLICATION
As acknowledged by the majority, plaintiff alleged that her decedent suffered a hostile work environment because of her status as a woman. She maintained that the decedent was subjected to severe and pervasive conduct because of her gender. The decedent’s employer purportedly did not resolve the issues or adequately respond to her complaints. These allegations of harassment, motivated by sex-based animus, are sufficient to withstand a motion for summary disposition.
CONCLUSION
Because the text of MCL 37.2202(1) indicates our Legislature’s intent to track the scope of protections provided by federal law, and because federal law recognizes hostile-work-environment claims on any ground articulated in 42 USC 2000e-2, Meritor, supra, it is proper to conclude that Michigan employees share the right to assert hostile-work-environment claims on the basis of any ground articulated in MCL 37.2202(1). The text of Michigan’s Civil Rights Act cannot reasonably be construed to permit work environments hostile to an employee’s religion, race, color, national origin, age, sex, height, weight, or marital status. Further, sexual harassment is not limited to conduct of a strictly sexual nature. For these reasons, I would affirm the judgment of the Court of Appeals. Any other interpretation violates fundamental principles of equality.
Kelly, J., concurred with Cavanagh, J.

 Joint Appendix, p 19a (para 31), citing MCL 37.2101.

 Brief in Support of Plaintiff’s Motion for Rehearing and Reconsideration, filed May 5, 1998, in the Ingham Circuit Court.

 Perreault Affidavit, paragraphs 5, 10, p 2.

 See attachment to plaintiffs motion for reconsideration, filed May 5, 1998.

 Id.

 See Lytle v Malady (On Rehearing), 458 Mich 153, 173 n 19; 579 NW2d 906 (1998), citing McDonnell Douglas Corp v Green, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973) (observing that Michigan adopted the four-part disparate-treatment proof from the United States Supreme Court’s McDonnell Douglas test to prove a prima facie case of discrimination); Smith v Consolidated Rail Corp, 168 Mich App 773, 776; 425 NW2d 220 (1988), citing Albemarle Paper Co v Moody, 422 US 405, 425; 95 S Ct 2362; 45 L Ed 2d 280 (1975) (articulating disparate-impact action as prescribed by the Supreme Court).

 The principles involved here continue to apply to race, color, religion or national origin.

 See Chambers v Trettco, Inc, 463 Mich 297; 614 NW2d 910 (2000); Quinto v Cross & Peters Co, 451 Mich 358; 547 NW2d 314 (1996).

 To reassure its audience that overruling Koester is appropriate, the majority quotes from Justice Young’s dialogue with plaintiffs counsel at *336 oral argument. Ante at 316-317 n 16. However, simply because counsel agreed that rejecting Koester would produce no “practical real-world dislocations . . . .”, it is important to note that only those employers subject to the federal statutes will be forced to adhere to the higher standards. Moreover, while employment handbooks provide useful indicators of employers’ policies, few harassing work environments are officially condoned. More often, employers or their supervisors simply fail to respond adequately to harassment from coworkers, as alleged by plaintiff in this case. Therefore, although responsive to Justice Young’s inquiry, I find little solace in counsel’s claim that he would recommend employers retain their current employment policies — in spite of their decreased liability pursuant to this decision.

 Eskridge, Frickey, & Garrett, Legislation and Statutory Interpretation, (Foundation Press: New York, 2000) p 256 (“Descriptively, people do not necessarily intend their list of directed activities to be comprehensive ones or even think through all the permutations to which their directives might be applied.”).

 Legal scholars have articulated this link:
[Wjomen are socially defined as women largely in sexual terms. The behaviors to which women are subjected in sexual harassment are behaviors specifically defined and directed toward the characteristics which define women’s sexuality: secondary sex characteristics and sex-role behavior. It is no accident that the English language uses the term sex ambiguously to refer both to gender status (as in “the female sex”) and to the activity of intercourse (as in “to have sex”). The term sexual is used in both senses. [MacKinnon, *338 Sexual Harassment of Working Women (Yale University Press: New Haven, 1979), p 182.]

 Plaintiff’s Brief in Opposition to Defendant’s Third Motion for Summary Disposition, filed June 17, 1998 in the Ingham Circuit Court, pp 4-7; Plaintiff-Appellant’s Application for Leave to Appeal, filed June 29, 1998, with the Court of Appeals, pp 7-10; Plaintiff-Appellant’s Brief, filed December 3, 1999, in the Court of Appeals, pp 10-12; Appellee’s Brief on Appeal, filed December 4, 2002, in the Michigan Supreme Court, pp 6-10.

 See n 2, Brief in Support of Plaintiffs Motion for Rehearing and Reconsideration, filed May 5, 1998, in the Ingham Circuit Court, pp 2-3 and attached documents (“Plaintiff has attached to her motion, the Affidavit of Patricia Perreault, which confirms that the [d]ecedent Virginia Rich was subjected to unwelcome sexual conduct and communication. . . . Plaintiff also has attached several documents that show that [d]ecedent Rich had filed a complaint with her employer for sexual harassment as well as contacted several different attorneys regarding allegations of sexual harassment.”).